## 10 EAST 40TH STREET BUILDING, INC. *v.* CALLUS ET AL.

No. 820.   Argued April 6, 1945.—Decided June 11, 1945.

*Mr. Joseph M. Proskauer,* with whom *Mr. Harold H. Levin* was on the brief, for petitioner.

*Mr. Monroe Goldwater,* with whom *Messrs. Aaron Benenson* and *James L. Goldwater* were on the brief, for respondents.

*Miss Bessie Margolin,* with whom *Solicitor General Fahy, Messrs. Chester T. Lane* and *Douglas B. Maggs* were on the brief, for the Administrator of the Wage and Hour Division, United States Department of Labor, as *amicus curiae,* urging affirmance.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

The Fair Labor Standards Act of 1938 regulates wages and hours not only of employees who are "engaged in commerce" but also those engaged "in the production of goods for commerce." Sections 6, 7, 52 Stat. 1060, 1062–63, 29 U. S. C. §§ 206, 207. For the purposes of that Act "an employee shall be deemed to have been engaged in the production of goods if such employee was employed . . . in any process or occupation necessary to the production thereof, in any State." § 3 (j). When these provisions first came here we made it abundantly clear that their enforcement would involve the courts in the empiric process of drawing lines from case to case, and inevitably nice lines. *Kirschbaum Co.* v. *Walling,* 316 U. S. 517. And this for two reasons. In enacting this statute Congress did not see fit, as it did in other regulatory measures, *e. g.,* the Interstate Commerce Act and the National Labor Relations Act, to exhaust its constitutional power over commerce. And "Unlike the Interstate Commerce Act and the National Labor Relations Act and other legislation, the Fair Labor Standards Act puts upon the courts the independent responsibility of applying *ad hoc* the

general terms of the statute to an infinite variety of complicated industrial situations." *Kirschbaum Co.* v. *Walling, supra,* at 523. Thus, Congress withheld from the courts the aid of constitutional criteria, compare, *e. g., Currin* v. *Wallace,* 306 U. S. 1; *Wickard* v. *Filburn,* 317 U. S. 111; *Polish Alliance* v. *Labor Board,* 322 U. S. 643, as well as the benefit of a prior judgment, on vexing and ambiguous facts, by an expert administrative agency. Compare, *e. g., Labor Board* v. *Fruehauf Co.,* 301 U. S. 49; *Gray* v. *Powell,* 314 U. S. 402, 412.

The Act has produced a considerable volume of litigation and has inevitably given rise to judicial conflicts and divisions. The lower courts, and only in a lesser measure this Court, have been plagued with problems in connection with employees of buildings occupied by those having at least some relation to goods that eventually find their way into interstate commerce.

In *Kirschbaum Co.* v. *Walling, supra,* we were concerned with maintenance employees of buildings concededly devoted to manufacture for commerce. In *Borden Co.* v. *Borella, post,* p. 679, the Fair Labor Standards Act was invoked on behalf of maintenance employees of a building owned by an interstate producer and predominantly occupied for its offices. Recognizing that the question in every case is "whether the particular situation is within the regulated area," we concluded that the employees of the buildings in the *Kirschbaum* case "had such a close and immediate tie with the process of production" carried on by the lessees as to come within the Act. The *Borden* case involved Borden employees who, if they had been under the same roof where the physical handling of the goods took place, could hardly, without drawing gossamer and not merely nice lines, be deemed not to be engaged in an "occupation necessary to the production of goods" as described by § 3 (j). To differentiate, in the incidence of the Fair Labor Standards Act, between main-

tenance employees who worked in the building where the business of the manufacture of milk products goes on and employees pursuing the same occupation for the Borden enterprise in an office separate from the manufacturing building, is to make too much turn on the accident of the division of the whole industrial process. The case immediately before us presents still a third situation differing both from *Kirschbaum* and *Borden*.

The facts are these. Petitioner owns and manages a 48-story New York office building. The offices are leased to more than a hundred tenants pursuing a great variety of enterprises including executive and sales offices of manufacturing and mining concerns, sales agencies representing such concerns, engineering and construction firms, advertising and publicity agencies, law firms, investment and credit organizations and the United States Employment Service. The distribution of occupancy in relation to the ultimate enterprises of the different groups of tenants was the subject of conflicting testimony and interpretation, but in our view does not call for particularization. Indisputably, the building is devoted exclusively to offices, and no manufacturing is carried on within it. The respondents are maintenance employees of the building, elevator starters and operators, window cleaners, watchmen and the like. They brought this suit under § 16 (b) of the Fair Labor Standards Act for claims of overtime payment to which they are entitled if their occupations be deemed "necessary to the production" of goods for commerce. Obviously they are not "engaged in commerce." The District Court dismissed the suit. 51 F. Supp. 528. The Circuit Court of Appeals reversed. 146 F. 2d 438. By a meticulous calculation, it found that the executive offices of manufacturing and mining concerns, sales agencies representing such concerns, and publicity concerns were engaged in the production of goods for interstate commerce, and, since the offices of these concerns occupied 42% of the rentable

area and 48% of the rented area, the maintenance employees of the owners of the building are engaged in occupations "necessary to the production" of goods for commerce. Conflict between this result and that reached by other circuits led us to bring the case here. 324 U. S. 833.[1]

The series of cases in which we have had to decide when employees are engaged in an "occupation necessary to the production" of goods for commerce has settled at least some matters. Merely because an occupation involves a function not indispensable to the production of goods, in the sense that it can be done without, does not exclude it from the scope of the Fair Labor Standards Act. Conversely, merely because an occupation is indispensable, in the sense of being included in the long chain of causation which brings about so complicated a result as finished goods, does not bring it within the scope of the Fair Labor Standards Act. See *Walling* v. *Jacksonville Paper Co.,* 317 U. S. 564; *Walton* v. *Southern Package Corp.,* 320 U. S. 540; *Armour & Co.* v. *Wantock,* 323 U. S. 126; *Skidmore* v. *Swift & Co.,* 323 U. S. 134. In giving a fair application to § 3 (j), courts must remember that the "necessary" in the phrase "necessary to the production" of goods for commerce "is colored by the context not only of the terms of this legislation but of its implications in the relation between state and national authority." *Kirschbaum Co.* v. *Walling, supra,* at 525. For as was pointed out in *Walling* v. *Jacksonville Paper Co., supra,* at 570, we cannot "be unmindful that Congress in enacting this statute plainly indicated its purpose to leave local business to the protection of the states." We must be alert, therefore, not to absorb by adjudication essentially local

[1] See, e. g., *Johnson* v. *Dallas Downtown Development Co.,* 132 F. 2d 287; *Cochran* v. *Florida Nat. Bldg. Corp.,* 134 F. 2d 615; *Tate* v. *Empire Bldg. Corp.,* 135 F. 2d 743; *Johnson* v. *Masonic Bldg. Corp.,* 138 F. 2d 817.

activities that Congress did not see fit to take over by legislation.

Renting office space in a building exclusively set aside for an unrestricted variety of office work spontaneously satisfies the common understanding of what is local business and makes the employees of such a building engaged in local business. Mere separation of an occupation from the physical process of production does not preclude application of the Fair Labor Standards Act. But remoteness of a particular occupation from the physical process is a relevant factor in drawing the line. Running an office building as an entirely independent enterprise is too many steps removed from the physical process of the production of goods. Such remoteness is insulated from the Fair Labor Standards Act by those considerations pertinent to the federal system which led Congress not to sweep predominantly local situations within the confines of the Act. To assign the maintenance men of such an office building to the productive process because some proportion of the offices in the building may, for the time being, be offices of manufacturing enterprises is to indulge in an analysis too attenuated for appropriate regard to the regulatory power of the States which Congress saw fit to reserve to them. Dialectic inconsistencies do not weaken the validity of practical adjustments, as between the State and federal authority, when Congress has cast the duty of making them upon the courts. Our problem is not an exercise in scholastic logic.

The differences between employees of a building owned by occupants producing therein goods for commerce, and the employees of a building intended for tenants who produce such goods therein, and the employees of the office building of a large interstate producer, are too thin for the practicalities of adjudication. But an office building exclusively devoted to the purpose of housing all the usual miscellany of offices has many differences in the practical

affairs of life from a manufacturing building, or the office building of a manufacturer. And the differences are too important in the setting of the Fair Labor Standards Act not to be recognized by the courts.

We have heretofore tried to indicate the nature of the nexus between employees who, though not themselves engaged in commerce, are engaged in occupations necessary for the production of goods for commerce by describing the necessary work that brings the occupation within the scope of the Act as work that had "a close and immediate tie with the process of production." *Kirschbaum Co.* v. *Walling, supra,* at 525. Doubtless more felicitous adjectives could be chosen, but the attempt to achieve a form of words that could avoid an exercise of judgment that a particular occupation is more in the nature of local business than not, is merely to be content with formulas of illusory certainty.

On the terms in which Congress drew the legislation we cannot escape the duty of drawing lines. And when lines have to be drawn they are bound to appear arbitrary when judged solely by bordering cases. To speak of drawing lines in adjudication is to express figuratively the task of keeping in mind the considerations relevant to a problem and the duty of coming down on the side of the considerations having controlling weight. Lines are not the worse for being narrow if they are drawn on rational considerations. It is a distinction appropriate to the subject matter to hold that where occupations form part of a distinctive enterprise, such as the enterprise of running an office building, they are properly to be treated as distinct from those necessary parts of a commercial process which alone, with due regard to local regulations, Congress dealt with in the Fair Labor Standards Act. Of course an argument can be made on the other side. That is what is meant by a question of degree, as is the question before us. But for drawing the figurative line the basis must be some-

thing practically relevant to the problem in hand. We believe that is true of the line drawn in this case.

*Judgment reversed.*

MR. CHIEF JUSTICE STONE.

The views I expressed in my dissent in *Borden Co.* v. *Borella, post,* p. 679, would, if accepted, control the decision in this case. As those views have been rejected by the Court, I join in the Court's opinion in this case.

MR. JUSTICE MURPHY, dissenting.

A proper understanding of the nature of the activities carried on in petitioner's 48-story office building in New York City leads to the inevitable conclusion that the respondent maintenance employees, like those in *Kirschbaum Co.* v. *Walling,* 316 U. S. 517, and in *Borden Co.* v. *Borella, post,* p. 679, are engaged in occupations "necessary to the production of goods for commerce" and hence are entitled to the benefits of the Fair Labor Standards Act of 1938.

(1) Approximately 26% of the rentable area of the building is occupied by the executive offices of manufacturing and mining concerns which are concededly engaged in the production of goods for commerce. Corporate policies are formed and directed from these offices. Most of them purchase raw materials for use in the physical processes of manufacturing. They keep in constant and close contact with the factories, supervising all of the manufacturing activities. Some of these offices draft designs and specifications for the articles produced in the factories. Business and sales departments located in these offices do work in connection with the distribution of these products. One office even handles parts for the machines manufactured by the company, doing repair work on the parts and packing and shipping them to out-of-state customers.

The case in this respect is indistinguishable from the facts in the *Borden* case. Here, as in the *Borden* case, the officers and employees working in these offices are part of the coordinated productive pattern of modern industry. The fact that none of the physical processes of manufacturing occurs in the same building is immaterial. Production requires central planning, control, supervision, purchase of raw materials, designing of products, sales promotion and the like as well as the physical, manual processes of manufacturing. These various central offices, then, are "part of an integrated effort for the production of goods," *Armour & Co.* v. *Wantock,* 323 U. S. 126, 130. And since the maintenance employees stand in the same relation to this productive process as did the employees in the *Kirschbaum* case, it follows that they are engaged in occupations "necessary to the production of goods for commerce."

The *Kirschbaum* case also made it clear that the provisions of the Act "expressly make its application dependent upon the character of the employees' activities." 316 U. S. at 524. Hence it is immaterial that the owner of the building which employs the respondent maintenance employees is not shown to have been engaged in the production of goods for commerce. As in the *Kirschbaum* case, it is enough if the employees are necessary to the production of goods by tenants occupying the building in which they work.

(2) Approximately 6.5% of the rentable area of the building is occupied by concerns engaged in writing and preparing mimeographed, photographic and printed matter which is shipped in interstate commerce. One company produces between 15,000 and 20,000 pages of mimeographed materials per week, 90% of which is sent outside the state. Another tenant produces 60 magazines having national circulations. Other concerns produce large quantities of pamphlets, photographs, magazines and advertising matter for interstate shipment.

Since telegraphic messages are "goods" within the meaning of the Act, *Western Union Co.* v. *Lenroot,* 323 U. S. 490, 502–503, it would seem clear that these magazines, pamphlets, etc. which are prepared in petitioner's office building are likewise "goods." And since the term "produced" includes "every kind of incidental operation preparatory to putting goods into the stream of commerce," *ibid.,* 503, the writing and preparation of these materials constitutes "production of goods" for interstate commerce. Here again the respondent maintenance employees are related to production in the same way as were the employees in the *Kirschbaum* case, thus making it clear that they are covered by the Act from this standpoint.

It is unnecessary to describe the activities of the other tenants, although it is conceded that about 58% of the total rentable area is occupied by concerns not engaged in the production of goods for commerce. It is sufficient that approximately 32.5% of the rentable area is devoted to production. The Administrator of the Wage and Hour Division of the Department of Labor has stated that he will take no enforcement action "with respect to maintenance employees in buildings in which less than 20 percent of the space is occupied by firms engaged there or elsewhere in the production of goods for commerce." Wage and Hour Division Release, November 19, 1943, P. R.–19 (rev.). Whether 20% occupancy by such firms is a reasonable minimum is not in issue here. Clearly a 32.5% occupancy is so substantial as to remove any doubt that the maintenance employees devote a large part of their time to activities necessary to the production of goods for commerce. Hence they are covered by the Act.

The starting point in cases of this nature is not to decide whether the activities carried on in the office building in question satisfy some nebulous "common understanding of what is local business." The crucial problem, rather, is to determine whether such activities constitute

an integral part of the productive process. Once it is clear that the activities are part of the process of production of goods for interstate commerce the interstate character of the activities becomes obvious; and it follows that occupations necessary to those activities partake of their interstate flavor. Neither attenuated analysis nor scholastic logic is necessary to understand the scope and coordination of the modern productive pattern and the integral part played by those who manage and direct the physical processes of production. To apply the Act in light of elementary economic facts is not beyond the ability of judges or beyond the intention of Congress.

Congress plainly intended "to leave local business to the protection of the states," *Walling* v. *Jacksonville Paper Co.,* 317 U. S. 564, 570, when it enacted this statute. But there is no indication that it intended to divide the process of producing goods for interstate commerce into interstate and local segments, applying the statute only to the former. And when Congress said that employees "necessary to the production" of goods for commerce were to be included within the Act, it meant just that, without limitation to those who were necessary only to the physical manufacturing aspects of production. Under such circumstances it is our duty to recognize economic reality in interpreting and applying the mandate of the people.

Mr. Justice Black, Mr. Justice Reed and Mr. Justice Rutledge join in this dissent.