**KRUGER v. LOS ANGELES SHIPBUILD-ING & DRYDOCK CORPORATION et al., and seven other cases.**

Civil Actions Nos. 5641–C to 5643–C, 5560–C, 5665–C, 5666–C, 5753–C, 5847–C.

District Court, S. D. California, Central Division.

March 10, 1947.

Paul W. Westerlund, of Long Beach, Cal., for plaintiff.

Stephens, Jones, La Fever, of Los Angeles, Cal., for defendant Los Angeles Shipbuilding & Drydock Corporation.

Frank R. Johnston and Edward R. Young, both of Los Angeles, Cal., for defendant Todd Shipyards Corporation.

## CAVANAH, District Judge.

We have presented for consideration, together, eight cases involving the right of the plaintiffs to recover overtime compensation under the federal Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., which the defendants urge:

In determining the issues, we must bear in mind the particular facts as disclosed by the record here, in each case, and independently apply, for this specific purpose, the general terms of the Act, as there are a variety of complicated situations in the activities of men. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; 10 East 40th Street Building, Inc. v. Callus, et al, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806, 161 A.L.R. 1263.

The questions urged and controlling are:

(A) Whether the plaintiffs were employees of the United States, or employees of the defendants.

(B) Were the plaintiffs and defendants engaged in commerce, or in the production of goods for commerce?

(C) Were the plaintiffs here exempt employees under the Act and the Regulations (sec. 13(a) of the Act and the Regulations) defining "executive employees," "administrative employees," "professional employees" (sec. 541, 1, 542, 2, and 541, 3 of Administrator's Regulations)?

There are three periods of time to be considered when applying the Fair Labor Standards Act:

First—the period when the defendant, Los Angeles Shipbuilding and Drydock Corporation, was operating the plant up to December 8th, 1943;

Second—the period when the Government took possession and operated the plant after December 8, 1943, to July 10, 1944, and

Third—the period after July 10, 1944, until the Government surrendered possession in January, 1946.

■ (A) It is evident that, under the Act, the right of recovery during the period of employment does not exist if the United States was the employer, as the Act is confined to private industry, for the Government is acting as a sovereign.

An analysis of the evidence discloses that, prior to December 8, 1943, the defendant, Los Angeles Shipbuilding and Drydock Corporation, operated a shipyard where the plaintiffs were employed at San Pedro, California. On December 3, 1943, the President of the United States made an executive order authorizing the Secretary of the Navy to take possession and operate the yard, who seized it, and put Rear Admiral Bowen of the United States Navy in charge on December 8, 1943. The Admiral then authorized the defendant, Todd Shipyards Corporation, to operate the yard for the Navy Department. At that time no formal contract was entered into between the United States and Todd Shipyard Corporation for the operation of the plant and the construction of facilities for the United States Navy until July 10, 1944, when Contract Nobs. 1708, a cost plus a fee contract, was executed and was in force during all of the period until January, 1946; under which the plaintiffs were employed, unless the evidence discloses that since July 10, 1944, the situation as to the Government and the defendant, Todd Shipyards Corporation and the plaintiffs was changed so that it can be said that the United States permitted and authorized the Todd Shipyards Corporation to independently, and not as an agent of the United States Government, deal with and employ the plaintiffs, directly and privately.

■ First: During the period of time when the defendant, Los Angeles Shipbuilding and Drydock Corporation, was operating the plant, it not only was constructing and repairing vessels of war for the Government, but engaged to some extent in commercial industry with private parties, entering into commerce or the production of goods for interstate commerce, thereby making the Fair Labor Standards Act ap-

plicable under the decision of the Ninth Circuit Court of Appeals in the case of Ritch et al. v. Puget Sound Bridge & Dredging Co. et al., 156 F.2d 334, hereinafter referred to, granting to the plaintiffs the right of recovery for overtime work during that period of time.

Second: During the perod of time from December 8, 1943 to July 10, 1944, the Government, under Executive Order, took exclusive possession and management of the plant until July 10, 1944, in the construction and repairing of vessels for the Navy of the United States, as heretofore stated, and not in any way for commercial purposes, and, also, during the period of time from July 10, 1944 until the Government surrendered operations in January, 1946.

We must turn to the contract of July 10, 1944, between the United States and the defendant, Todd Shipyards Corporation, and ascertain what was the intent, the relations of the parties, and the scope of the contract, and we find therein the provisions that:

"Whereas the Secretary, through the Officer in Charge, has determined that the plant shall be operated by the contractor as an independent contractor, and not as agent of the Secretary or of the Department, and has delegated to the Chief of the Bureau of Ships, the authority to execute this contract," and "Article 1. Scope of Contract. (a) Subject to the terms and conditions hereinafter provided, the contractor shall operate the plant as an independent contractor in accordance with good commercial practices accepted in business of the character engaged in by the Company, and comparable to the practices obtained in other ship repair and ship construction yards operated by the contractor, without limiting the generality of the foregoing. The contractor shall select, employ, and supervise all management and labor personnel, and purchase all materials, services, equipment, and supplies, (including loose and hand tools) necessary for the operation of the plant; shall undertake the construction and completion of such vessels as the Department may specify; shall repair, alter, and convert vessels on the terms and conditions hereinafter specified; shall operate, preserve, protect, maintain, and repair buildings, machinery and equipment; shall acquire, construct and install such additional facilities as the Department may direct; shall, subject to the approval of the Department, determine policies with respect to engineering, layout, and design; shall submit bills and statements and make collections thereon; shall maintain books, records, and inventories at the plant applicable to the possession and operation thereof, and shall prepare and submit appropriate reports to the Department.

"(b) The contractor in the performance of this contract is authorized to use the plant and its facilities and appurtenances," and "Article 2. Operators. (a) Complete the vessels now in process of construction at the plant in accordance with the approved plans and specifications therefor to the satisfaction of the Department, and in accordance with the provisions of Article 6 hereof. (b) Construct such other vessels as the Company have contracted with the Government to build. Article 3. Commitments. (a) The contractor shall employ all labor and management personnel necessary to the performance of this contract. All such employees shall be employees of the contractor and not the Department. The contractor shall employ such additional personnel, and such overtime and shift work, as may be directed and approved by the Department."

 From the foregoing provisions of the contract, and other provisions thereof, and the evidence, the relationship between the United States and defendant, Todd Shipyards Corporation, was one where the defendant, Todd Shipyards Corporation, was operating as an independent contractor and had authority and did employ all labor and management necessary to the performance of the contract, and all employees were employees of the defendant, Todd Shipyards Corporation, and not of the Government, thereby making the Fair Labor Standards Act applicable if the plaintiffs and defendants were engaged in commerce, or in the production of goods for commerce, which brings us to the consideration of the question (B). The Fair Labor Act makes it only applicable where compensation is claimed for labor performed where the employee and employer were engaged in commerce or in the production of goods for

commerce, and this is to be determined from the nature of the operations of the employer and the nature of the work of the employee. Under the contract referred to, and the evidence, the United States was engaged in a war and was, at the shipyard, manufacturing and repairing vessels as a sovereign in the prosecution of the war, which was necessary in defense of the nation. It was not engaged in commerce or in the production of goods for commerce. There was no commercial feature involved in its operations at the plant, as its activities were confined exclusively to the manufacture and repairing of vessels for the United States Navy, and the plaintiffs were working on goods such as Navy vessels and repair work for them for the United States, the exclusive ultimate consumer and owner. The whole enterprise was that of the Government. Lynch et al. v. Embry-Riddle Co., D.C., 63 F.Supp. 992.

The case of Ritch et al. v. Puget Sound Bridge and Dredging Co., et al., 9 Cir., 156 F.2d 334, urged by plaintiffs as granting them the right to a recovery, is distinguishable from the facts in the present case, as we find the facts there recited which are pertinent here were that:

The " * * * dredging contractors are private contractors engaged in the dredging of two channels in the harbor of the Bremerton Navy Yard in the navigable waters of Puget Sound, extensively used for interstate commerce, deepening such navigable waters onwards towards the Navy Yard. For the continued deepening of the navigable waters, the dredging contractors were building, as the lower portion of a pier structure beginning in these navigable waters and extending to the Navy Yard shore, on each lower side of the pier, retaining walls on the pier side of each channel to prevent silting from the tide waters working in and out under the pier. The dredging contractors were to construct on the pier the dredging apparatus to dredge the channels alongside and keep the depth of water sufficient for the vessels navigating the Puget Sound waters into and out of the channels and berths. * * * Combat vessels also are engaged in the transport of the mails of non-combatants as well as combatants under contracts with the Postmaster General. They also engage in the 'transportation' of the goods of private persons under bills of lading issued by the officers of such ships, for which Article 1815 (4c) of the Shipping Guide of the Bureau of Supplies and Accounts sets up the rates and procedure. This is now done with the cooperation of the War Shipping Administration under the authority of Executive Order 9054, of February 7, 1942, 50 U.S.C.A.Appendix, § 1295 note, Cum.Supp. C.F.R. chap. 3.

"All naval vessels are engaged in the transportation from out of the state of commercial merchandise which is sold as an ordinary commercial transaction at a profit to those on board. United Stated Navy Regulations of 1920, Arts. 1402, 1403, 1404. * * *

"Since the combat ships are so engaged in commerce for the use of private persons, that is in transportation, transmission and communication for such persons, the contractors' deepening of the navigable waters by the channels, with the retaining walls to prevent the silting of the channels from the pier sides, for the ships' navigation into the berths, is engaging in commerce as in Walling v. Patton-Tulley Transportation Co., 6 Cir., 134 F.2d 945, 947."

■ (C) We approach the further question as to whether the plaintiffs were exempt employees under the Act and Regulations defining who are exempt. The Act defines those who are exempt as (section 13(a) thereof) and (sections 541, 1 and 542, 2) and (section 541, 3 of the Administrator's Regulations) "executive employees," "administrative employees," and "professional employees." The nature of the work performed by the plaintiffs at the times involved was neither executive, administrative, nor professional, as required under the Act and Regulations, before it could be said to be exempt.

Therefore, under the evidence in the present case and the views thus stated, the plaintiffs are not entitled to recover for overtime work from the defendant, Todd Shipyards Corporation, but are entitled to recover from the Los Angeles Shipbuilding and Drydock Corporation for overtime work—the amount of overtime work ren-

dered during the period of time above stated that the defendant, Los Angeles Shipbuilding and Drydock Corporation, was operating the plant prior to December 8th, 1943, plus attorney fees and costs.

Finding and decree will be entered in accordance with the views stated and these conclusions.