**MORRIS et al. v. BEAUMONT MFG. CO.**

**No. 621.**

United States District Court
W. D. South Carolina

Spartanburg Division.
April 3, 1947.

910

Venable Vermont, Spartanburg, S. C., C. C. Brown, Spartanburg, S. C., for plaintiffs.

Benjamin O. Johnson, Spartanburg, S. C., for defendant.

TIMMERMAN, District Judge.

This case was heard on March 4, 1947, without the aid of a jury. It is under the Fair Labor Standards Act, specifically Section 16(b), 29 U.S.C.A. § 216(b), thereof, to recover alleged overtime compensation, liquidated damages and attorneys fees.

The defendant is a South Carolina corporation with its principal place of business in the City of Spartanburg, South Carolina. It owns and operates a textile manufacturing plant where it manufactures cotton textiles for interstate commerce. Its manufacturing plant is enclosed by a substantial fence within which all of its manufacturing activities are carried on. Additionally it owns a number of residences in the City of Spartanburg which are rented primarily to its employees. The residences are within a radius of half a mile of the manufacturing plant and are located on city streets. They are interspersed with other dwellings not owned by the defendant. The defendant does not maintain a mill village in the sense that term is commonly used. No part of the manufacturing process of the defendant is performed in any of its dwellings.

Less than one-half of the defendant's employees reside in said dwellings. In 1939, 1940 and 1941 the defendant owned 223 such residences. In 1942 it owned 270; in 1943, 310; and in 1944 and 1945, 357, or an average for the years in question of 280 residences.

In 1939 the defendant had 680 employees, of whom 408 occupied dwellings leased from the defendant. This number progressively increased until 1943 when the defendant had 1530 employees, of whom 507 occupied dwellings leased from the defendant. Thereafter the number of employees decreased until in 1945 there were only 1100, of whom 665 occupied dwellings leased from the defendant. During the period in question the average number of dwellings owned by the defendant was 280 and the average number of employees occupying those dwellings was 488. During the same period the average number of employees was 1107. The occupancy of company owned residences was optional with the employees. In fact the defendant did not furnish residences for all of its employees and on the average more than one-half of them lived in homes owned by themselves or rented from other parties.

The plaintiffs were at sometime during the period in question employees of the defendant. They were either painters or carpenters. During all work-weeks in which any of the plaintiffs performed any work in, about or upon the defendant's manufacturing plant or production facilities, such work-weeks were treated by the defendant as within the coverage of the Act and the plaintiffs were paid accordingly. No complaint is made about this.

For the work-weeks during which the plaintiffs were engaged exclusively in the construction, maintenance or repair of residences rented by the defendant to its employees, the time worked each week and the rate of pay therefor has been stipulated. So if such work-weeks are within the coverage of the Act the amount due each plaintiff has been agreed upon.

As I view this case the plaintiffs were not covered by the Act while engaged

exclusively in "the construction, maintenance and repair of the residences in the mill village owned by the defendant and occupied by its employees"; or, to state the matter differently, while the plaintiffs were so employed they were not engaged in the production of goods for commerce as that term has been defined.

█ It is conceded that the Wage and Hour Division of the United States Department of Labor has ruled that the defendant at all relevant times complied with the Division's construction of the Fair Labor Standards Act and all valid regulations promulgated thereunder. The plaintiffs contend that this is not conclusive of the matter. I agree that it is not, but at the same time the administrative determination is entitled to great weight. United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345.

█ As held in Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, the application of the Act depends upon the character of the employees' activities. In the instant case we are not concerned with the nature of the employer's business but with the character of work done by the employees. If they were engaged in the production of goods for commerce or in an occupation necessary to the production of such goods, they would be within the coverage of the Act. Walling v. Roland Electric Co., 4 Cir., 146 F.2d 745; Walling v. Goldblatt Bros., 7 Cir., 128 F.2d 778.

In the Kirschbaum case, supra, the Court was concerned with the rights of maintenance employees of a building concededly devoted to manufacture for commerce, and there it was held that such employees were within the coverage of the Act. That is not the case here. In the instant case the residences upon which the plaintiffs worked were in no sense devoted to manufacture for commerce. It is true that some of the defendant's employees occupied these dwellings as homes for themselves and their families, but nothing was done therein to promote the production of goods for commerce.

In Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865, 161 A.L.R. 1258, the maintenance employees of a building, 58% of which was occupied by officers of the manufacturing corporation, and wherein the production of goods for interstate commerce by the corporation was administered, managed and controlled, were held to be within the protection of the Act; but again that is not the case here. None of the business of the defendant was attended to in the residences in question. They were occupied only as homes for some of the defendant's employees and their families. In fact none of the defendant's business activities, by way of management or production were carried on or considered in the residences maintained and repaired by the plaintiffs.

In 10 East 40th Street Bldg. Co. v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 1229, 89 L.Ed. 1806, 161 A.L.R. 1263, it was held that maintenance employees of a New York office building were not covered by the Act. The offices in this building were leased to more than 100 tenants engaged in a variety of enterprises. As stated by the Court, "Indisputably, the building is devoted exclusively to offices, and no manufacturing is carried on within it. * * * Obviously they [the employees] are not 'engaged in commerce.' "

I have been unable to find any case that parallels this one in point of fact and none has been cited. However, I think it clearly inferable from the adjudicated cases that the Act does not extend to occupations merely affecting commerce, even if it can be said in a literal sense that eating and sleeping and resting from one's labor affects commerce. Something more than that must appear. Those claiming the protection of the Act must establish facts showing that the work done by them has some substantial relation to the production of goods for commerce. See McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 1252, 87 L.Ed. 1538. In that case it is said:

"It is not important whether the employer, in this case the contractor, is engaged in interstate commerce. It is the work of the employee which is decisive. Here the employee supplies the personal needs of the maintenance-of-way men. Food is consumed apart from their work.

912

The furnishing of board seems to us as remote from commerce, in this instance, as in the cases where employees supply themselves. In one instance the food would be as necessary for the continuance of their labor as in the other."

Hence it may be observed that, if furnishing of board to employees engaged in commerce is as remote from commerce as where employees provided their own board, it would follow that the providing of homes for employees and their families is as remote from commerce as if the homes were supplied by the employees themselves.

I conclude as a matter of law that the plaintiffs are not within the coverage of the Act and that judgment should be entered for the defendant. It is so ordered.