STUMBORG ET AL., APPELLANTS, *v.* STURRETT ET AL., APPELLEES.

(No. 2540—Decided February 7, 1953.)

*Mr. M. Paul Redinger,* for appellants.
*Mr. James V. Armogida,* for appellees.

McCLINTOCK, P. J. This is an appeal on questions of law from a judgment of the Court of Common Pleas. We will refer to the parties as they were designated in the court below, to wit, the plaintiffs and the defendants.

Plaintiffs in their petition allege that they are instituting an action on behalf of themselves and all other similarily situated employees of the defendants; that the defendants were engaged in the business of mining, transporting and selling coal; and that such coal was mined in Stark and adjoining counties and

transported by the defendants from the mines to Akron, Canton and other cities, and there sold by defendants to The Timken Roller Bearing Company, The Goodrich Tire & Rubber Company, The Goodyear Tire & Rubber Company and other manufacturing companies engaged in industry affecting interstate commerce.

Plaintiff William Smith was employed by defendants sometime prior to April 30, 1950, as a bulldozer operator at an hourly rate of $1.50 per hour, which rate was thereafter increased on January 7, 1951, to $1.75 per hour. Smith continued in defendants' employ until June 6, 1951.

The petition enumerates the various hours of work performed each week by various persons, and it is claimed that they are entitled to compensation at the rate of one and one-half times their hourly rate for all time employed in excess of 40 hours per week, as provided by subdivision (a) of Section 7 of the Federal Fair Labor Standards Act (Title 29, Subdivision [a] of Section 207, U. S. Code).

To this petition the defendants filed a demurrer, in which it is stated that the plaintiffs' petition failed to state facts constituting a cause of action. Upon due consideration, the court sustained the demurrer and, the plaintiffs not desiring to plead further, the court dismissed the petition. Plaintiffs appealed to this court on questions of law, and for their assignments of error say that the Court of Common Pleas of Stark County erred as a matter of law in sustaining the demurrer of the defendants to the petition of the plaintiffs on the ground that such petition did not state facts constituting a cause of action, and in dismissing the petition of the plaintiffs.

Subdivision (j) of Section 3 of the Fair Labor

Standards Act (Title 29, Subdivision [j] of Section 203, U. S. Code) defines "produced" as meaning "produced, manufactured, mined, handled, or in any other manner worked on in any state; and for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any state."

In the fourth headnote to the case of *West Kentucky Coal Co.* v. *Walling, Administrator,* 153 F. (2d), 582, we find the following:

"Where more than 50 per cent. of employer's coal from a certain outlet was sold to concerns engaged in production of goods for commerce, employees who furnished the coal for such use or engaged in occupation necessary for use of coal in such production were covered by the Fair Labor Standards Act. Fair Labor Standards Act of 1938, Section 3(j), 29 U. S. C. A., Section 203(j)."

See, also, *Ullo* v. *Smith,* 177 F. (2d), 101, 12 A. L. R. (2d), 1122, the first, second and seventh A. L. R. headnotes being as follows:

"1. Employees engaged in work necessary to the maintenance of a building leased to various tenants, for the purposes to which the building is devoted, are covered by the Fair Labor Standards Act, where a substantial part of the building is used in the production of goods for commerce.

"2. A substantial part of a building is used in the production of goods for commerce, so as to bring its maintenance employees within the Fair Labor Standards Act, where approximately 20 per cent of the rent-

able space is occupied by tenants substantially engaged in actual physical production on the premises.''

''7. The determination, for purposes of coverage of building maintenance workers by the Fair Labor Standards Act, of the question whether space actually used by one of a number of tenants of a building for physical production of goods for commerce or for activities relating to such production on the premises is a substantial part of all the space used by such tenant, is not a problem of mensuration, but one of judgment or the weighing of numerous relevant factors such as the floor layout, the percentage of employees on the premises engaged in actual physical production, the proportion of activities of other employees related to such physical production on the premises, and the quantitative and functional relation of such production to the total production activities supervised from the executive office in the building.''

In the case of *10 East 40th Street Building, Inc.*, v. *Callus*, 325 U. S., 578, 89 L. Ed., 1806, 65 S. Ct., 1227, 161 A. L. R., 1263, the Lawyers Edition headnotes are as follows:

''1. The mere fact that an occupation involves a function not essential to the production of goods does not exclude it from the scope of the Fair Labor Standards Act (29 USC, Sections 206, 207).

''2. The mere fact that an occupation involves a function indispensable to the production of goods, in the sense of being included in the long chain of causation resulting in finished goods, does not bring it within the scope of the Fair Labor Standards Act (29 USC, Sections 206, 207).

''3. Maintenance employees, such as elevator starters and operators, window cleaners, watchmen, of the owner of a 48-story building devoted exclusively to of-

fices leased to more than a hundred tenants pursuing a great variety of enterprises, part of whom are, and part not, engaged in occupations necessary for the production of goods for interstate or foreign commerce, are not within the minimum wage and overtime clauses of the Fair Labor Standards Act (29 USC, Sections 206, 207) providing that for the purposes of the Act an employee shall be deemed to have been engaged in the production of goods for interstate or foreign commerce if employed in any process or occupation necessary to such production; and this irrespective of the proportion of tenants so engaged to those not so engaged.''

Justice Frankfurter delivered the opinion in that case. It was a five to four decision, and, in looking over the United States Supreme Court cases, we find that Justice Frankfurter wrote most of the opinions involving the questions of the Fair Labor Standards Act. On page 579, *ibid.*, he uses the following language:

''The Fair Labor Standards Act of [June 25] 1938 regulates wages and hours not only of employees who are 'engaged in commerce' but also those engaged 'in the production of goods for commerce.' Sections 6, 7, 52 Stat. 1060, 1062-63, 29 U.S.C., Sections 206, 207. For the purposes of that Act 'an employee shall be deemed to have been engaged in the production of goods if such an employee was employed * * * in any process or occupation necessary to the production thereof, in any State.' Section 3(j). When these provisions first came here we made it abundantly clear that their enforcement would involve the courts in the empiric process of drawing lines from case to case, and inevitably nice lines. *Kirschbaum Co.* v. *Walling,* 316 U. S., 517. And this for two reasons. In enacting this

statute Congress did not see fit, as it did in other regulatory measures, *e. g.*, the Interstate Commerce Act and the National Labor Relations Act, to exhaust its constitutional power over commerce. And 'Unlike the Interstate Commerce Act and the National Labor Relations Act and other legislation, the Fair Labor Standards Act puts upon the courts the independent responsibility of applying *ad hoc* the general terms of the statute to an infinite variety of complicated industrial situations.' *Kirschbaum Co.* v. *Walling, supra,* at 523.''

Again, in the case of *A. B. Kirschbaum Co.* v. *Walling, Administrator,* 316 U. S., 517, 86 L. Ed., 1638, 62 S. Ct., 1116, the first and fifth Lawyer's Edition headnotes provide:

''1. Operating and maintenance employees of the owner of a loft building, space in which is rented to persons producing goods principally for interstate commerce, are within the minimum wage and overtime compensation provisions of the Federal Fair Labor Standards Act of 1938 (52 Stat. at L. 1060, 29 U.S.C., Section 201 *et seq.*) which provides that for the purposes of the act an employee shall be deemed to have been engaged in the production of goods if employed in any process or occupation necessary to the production thereof.''

''5. The statutory definition of employees engaged in the production of goods for commerce, by the provisions of Section 3 (j) of the Federal Fair Labor Standards Act of 1938 (52 Stat. at L. 1060, 29 U.S.C., Section 201 *et seq.*) that 'for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed * * * in any process or occupation necessary to the production thereof,' is to be construed in the

context of the history of Federal absorption of governmental authority over industrial enterprise.''

A very complete summary of the various questions involved in the Fair Labor Standards Act is found in 31 American Jurisprudence, 1953 Cumulative Supplement, 199, Section 456, and reads as follows:

''Congress did not intend that the Fair Labor Standards Act should apply to all employees connected in any way with interstate commerce. There is no requirement in the Fair Labor Standards Act that the employer should be engaged in commerce and it is held that the nature of the employee's employment and not the character of the employer's business is the test whether the employee is engaged in commerce within the meaning of the act. Contrariwise, in order for an employee to come within the provisions of the Fair Labor Standards Act it is not sufficient that the employer is engaged in commerce, as an employer may be engaged in commerce generally but some of its activities may be so segregated and apart from the others and be of such a nature that it is purely intrastate business. The applicability of the Fair Labor Standards Act in the case of employees of one not all of whose business is of an interstate character is dependent upon whether a substantial part of the employee's activities relate to goods the local distribution of which is a continuation of their movement in the channels of interstate commerce. If a substantial part of an employee's activities relate to goods whose movement in the channels of interstate commerce is established he is covered by the act. On the other hand, it has been said that the percentages of interstate and intrastate commerce in the distribution of goods produced by an employer is not a material consideration in determining whether an employee is engaged in interstate commerce or in the production of

goods for such commerce within the meaning of the act.''

The petition of the plaintiffs alleges only that the coal was mined in Stark and adjoining counties and was transported by the defendants from the mine to Canton, Akron and other cities, and there sold by the defendants to The Timken Roller Bearing Company, The Goodrich Tire & Rubber Company, The Goodyear Tire & Rubber Company and other manufacturing establishments engaged in industry affecting interstate commerce.

This language of the petition, which is the gist of the matter under consideration, does not state that a substantial amount of the coal mined by plaintiffs was used in the manufacture of products shipped in interstate commerce, and for this reason and by reason of the authorities herein cited, the judgment of the Court of Common Pleas must be and is hereby affirmed.

*Judgment affirmed.*

PUTNAM and MONTGOMERY, JJ., concur.