Teresa JUAREZ, Rufina M. Villalobos, Lucille G. Holguin, Gloria A. Trujillo, Andrea Llamas, Mary Lou Escoto, Epifania Ontiveroz, Estella C. Ortiz, Beatrice M. Ortega, Guadalupe G. Martinez, Consuelo A. Valerio, Adelita L. Montoya, Carolina Rodriguez, Teresa Marrujo, Hilaria S. Escoto, Maria A. Costales, Natividad H. Barraza, Emilia C. Arzola, Maisie P. Gonzales, Bessie A. Gibbs, Dolores O. Esqueda, Josefa T. Guadiana, Cecila Olivas, Carmen M. Ortega, Juana Orosco, Lucretia Macias, Robert Medina Alvarado, Manuel Morales, Horacio Grijalva, Josephine Campbell, Genoveva D. Reyes, David O. Carrasco, Librado C. Morena, Maria M. Aguirre, Clementa Morales, Elouise M. Gonzales, Elvira M. Gonzales, Eva Martinez, Mary Martinez, Lorenza Legarda, Anita V. Flores, Ida A. Pacheco, Eduvigen L. Costales, Genevive L. Aguilar, Consuelo Martinez, and Teodora G. Martinez, Appellants,

v.

KENNECOTT COPPER CORPORATION, a corporation, Appellee.

No. 5047.

United States Court of Appeals Tenth Circuit.

July 26, 1955.

Kenneth N. Kripke, Denver, Colo. (Robert E. McLean, Denver, Colo., on the brief), for appellants.

Ben Shantz, Silver City, N. M. (William A. Ziegler, Jr., New York City, on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

This is an action under the Fair Labor Standards Act of 1938, as amended,[1] to recover unpaid minimum wages, unpaid overtime compensation, liquidated damages, attorneys' fees and costs from the Kennecott Copper Corporation, herein referred to as Kennecott. Trial was had to the court. It made detailed findings of fact, conclusions of law, and rendered judgment based thereon for the defendant.

At the outset, we wish to commend the attorneys for both parties for the briefs they have filed in this case. The briefs are concise, yet clear and exhaustive. They cite, marshal and analyze all pertinent authorities in a readily understandable manner, yet appellants' brief covers only 37 pages and appellee's brief only 27 pages.

There is no disputed issue of fact. The sole question is the permissible legal inferences that flow therefrom. The facts may briefly be summarized as follows: Kennecott is engaged in commerce in the mining and processing of copper ore from an open pit copper mine at Santa Rita, New Mexico. It also operates a smelter and refinery at Hurley, New Mexico, which combined operation is known as its Chino Mines Division.

In connection with this operation at Santa Rita, New Mexico, it has for many years maintained a company-owned and operated hospital located at the rim of its open pit at Santa Rita. All the plaintiffs, the appellants herein, are presently, or have been in the two years prior to the bringing of this action, employed in various capacities in connection with the operation of the hospital. None of them has been paid the minimum wage required by the Act for employees covered thereby. The amounts of under-payment and the amounts due them in the event the Act applies to their activities were stipulated and are not in dispute.

The trial court found that the maintenance of the hospital was a semi-public operation; that caring for patients consisting of the general public and members of mining company employees' families constituted approximately eighty per cent of its operation and that only twenty per cent of its operation consisted in caring for employees; that the operation of the hospital was not an integral part of Kennecott's mining business; that all other mining companies operated in the same area as defendant without maintaining hospitals; that Kennecott for some years has planned to discontinue the operation of its hospital and at the present time has definite plans to discontinue such operation in the near future; that there were ample hospital facilities in the area to care for defendant's employees and the general public, without the maintenance of its hospital at Santa Rita; that there was no interchange of employees between the operation of the hospital and the operation of the mine, mill and smelter; that the chief surgeon and the other doctors on the staff of the hospital are paid a salary by defendant but also engage in independent practice of their profession; that the employment of the plaintiffs at the hospital was employment in a retail or service establishment; that the services rendered at the hospital were rendered entirely within the State of New Mexico and to the ultimate consumer and not for resale; and that less than five per cent of the patients cared for in the hospital came from outside the State of New Mexico.

Based upon these findings, the court concluded as a matter of law that the employees, the plaintiffs and each of

1. 29 U.S.C.A. § 201 et seq.

them, were not engaged in commerce or in the production of goods for commerce and were thus not covered by the Fair Labor Standards Act; that such employees were employed in a retail or service establishment and such employment was exempt from the provisions of the Fair Labor Standards Act; that the failure of Kennecott to pay plaintiffs minimum wages and overtime compensation under the Fair Labor Standards Act was in good faith. Based upon these findings and conclusions, the court rendered its judgment that plaintiffs take nothing and that Kennecott have and recover its costs.

It is clear that appellants are not directly engaged in commerce or in work for the production, processing or sale of goods in commerce. It is contended, however, that their work is so closely related to the production of goods for commerce and so essential thereto as to place them in a "closely related process or occupation directly essential to the production" of goods for commerce.

As pointed out by Mr. Justice Frankfurter in the early case of 10 East 40th Street Building, Inc., v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 1228, 89 L.Ed. 1806, no hard or fast rule can be laid down to determine what constitutes engaging in commerce or the production of goods for commerce, and that in the application of the Act it would be necessary to draw lines from case to case and "inevitably nice lines." Because each case must stand upon its own facts, decided cases are seldom determinative and are of value only by analogy when the facts are somewhat similar. No definite lines can be drawn. We finally come to a place where, considering the objectiveness of the Act, we must say, "This case falls within the Act but this case is beyond the scope thereof."

The official interpretations of the Administrator of the Wage and Hour Act clearly show that exact standards and definitions are not possible. Thus 29 C.F.R. § 776.18(a) contains illustrations of facts falling within and without the Act. It is there stated that employees engaged in a restaurant "to provide a convenient means of meeting personal needs of his employees" are not within the Act and that such employees are not engaged in work closely related and directly essential to the production of goods for commerce; and "Similarly, employees of the producer or of an independent employer who are engaged only in maintaining company facilities for entertaining the employer's customers, or in providing food, refreshments, or recreational facilities, including restaurants, cafeterias and snack bars, for the producer's employees in a factory * * * would not be doing work 'directly essential' to the production of goods for commerce."

■ Apparently no case involving employees of a company owned hospital has come before the courts. The cases nearest in point are those involving restaurant employees and cooks employed in feeding employees engaged in commerce or the production of goods for commerce. Appellants cite a number of cases in which such employees were held to be covered by the Act.[2] Most of these cases arose prior to the amendment of Section 203(j) of the Act in 1949. By that amendment the word "necessary" was dropped from the Act and the words "in any closely related process" were added, making the section read "or in any other manner working on such goods, or *in any closely related process or occupation directly essential to the production thereof, in any State.*" We think it is clear from the legislative history that this amendment was to restrict coverage with respect to such employees. The conference report, H.R. Rep.No.1453, 81st Cong., 1st Sess., Oct. 17, 1949, W.H.M. 6:607, states, "The courts have also held the act applicable to employees engaged in maintaining

2. Hawkins v. E. I. DuPont de Nemours & Co., 4 Cir., 192 F.2d 294; Ikola v. Snoqualmie Falls Lumber Co., 1 WH Cases 1073 (1941); McComb v. Factory Stores Co. of Cleveland, D.C., 81 F.Supp. 403.

and repairing private homes and dwellings where such homes and dwellings are being leased by interstate producers to their employees. Coverage of the Act has also been extended to employees of an individually owned and operated restaurant located in a factory. McComb v. Factory Stores [Co.] D.C.N.D.Ohio 1948, 81 F.Supp. 403."

"Under the bill as agreed to in conference an employee will not be covered unless he is shown to have a closer and more direct relationship to the producing, manufacturing, etc., activity than was true in the above-cited cases."

Clearly this amendment was intended to eliminate marginal employees who under the decisions of the courts had heretofore been included. But even under the Act prior to its amendment in 1949, we think the decision of the trial court was correct. In all the cases in which the courts have held that employees, such as restaurant employees or employees engaged in maintaining housing facilities for employees engaged in commerce or the production of goods for commerce were under the Act, there were present unusual conditions which caused the courts to conclude that the Act applied. The services furnished could not be obtained unless the employer furnished them and without them the work of the employees engaged in commerce could not have been carried on.

Such was not the situation with respect to hospital facilities for Kennecott employees. Other mining companies in the vicinity did not maintain such facilities and were able to conduct their interstate commerce activities unimpaired. The operation of this hospital is a semi-public business. It cares for patients from the general public and for member patients of the employees' families. The doctors staffing the hospital devote only part of their time to the hospital and on the side engage generally in the practice of their profession. In fact, only twenty per cent of the hospital's patients were employees and eighty per cent were either members of employees' families or patients from the general public. It is also without dispute that there are available in the near vicinity adequate hospital facilities where employees may receive medical and hospital care. Under these circumstances, there is no such pressing need that the company furnish these services in order to carry on its operations in commerce as will bring these employees within the ambit of the Act, and that we think was so even under the Act before its amendment in 1949.

We think the court correctly concluded that these employees were not covered by the Act. This conclusion fully disposes of the case and makes unnecessary a consideration of the remaining assignments of error.

Affirmed.