**WALLING, Administrator of Wage and Hour Division, U. S. Dept. of Labor, v. HAMNER.**

**Civil Action No. 72.**

District Court, W. D. Virginia, at Abingdon.
March 11, 1946.

Lemuel H. Davis, Regional Atty., and William R. Allcott, Associate Atty., U.S. Dept. of Labor, both of Richmond, Va. (Douglas B. Maggs, Sol. of Labor, William S. Tyson, Acting Sol. of Labor, and Jeter S. Ray, Asst. Sol., United States Department of Labor, all of Washington, D. C., on the brief), for plaintiff.

Fred B. Greear, of Norton, Va., for defendant.

BARKSDALE, District Judge.

This action having been tried upon the facts by the Court without a jury, the Court doth hereby find the facts specially and state separately its conclusions of law thereon, and directs the entry of the appropriate judgment as follows, in accordance with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c:

### Findings of Fact.

The facts herein have been stipulated and agreed, and I hereby find the facts, as stipulated, to be as follows:

The defendant, Russell Hamner, is engaged in the saw mill business in Wise County, Virginia. This business is solely owned, operated and controlled by the said Russell Hamner.

A substantial part of the operations of this business involves the production of mine props or mine timbers used to support the roof of coal mines when the coal is taken out. These mine props or mine timbers are sold to the Central Supply Company of Andover, Virginia. The Central Supply Company, Andover, Virginia, sells these mine props or mine timbers to the Stonega Coke & Coal Company of Big Stone Gap, Virginia, and they are used by this firm in the production of coal in Wise County, Virginia, which coal is shipped in interstate commerce. The defendant, Russell Hamner, at all times knew that the

mine props and mine timbers produced by him would be used by the Stonega Coke & Coal Company in the production of coal for commerce.

Russell Hamner is also engaged in the production of mine timbers from land owned by the said Russell Hamner and also by the Norton Coal Company of Norton, Virginia. These mine timbers are used by this company in the production of coal in Wise County, Virginia, which coal is used to produce coke. This coke is shipped in interstate commerce. The said Russell Hamner knew the purpose for which these timbers were used and that the Norton Coal Company shipped its coke products in interstate commerce.

The said Russell Hamner is, and was at all times, engaged in the production of rough lumber which was sold and delivered by him to the E. W. Jessee Company. This rough lumber is delivered by the defendant Russell Hamner to a concentration yard owned and operated by E. W. Jessee Company and is commingled with other rough lumber purchased by the E. W. Jessee Company from other operators. A substantial part of this lumber purchased by the E. W. Jessee Company is sold in interstate commerce and this fact was known to the said Russell Hamner at the time he sold and delivered lumber to the E. W. Jessee Company.

The said Russell Hamner paid no overtime. Three of his employees, during the period covered by the complaint, worked more than the prescribed number of hours, and were therefore entitled to overtime payments in the event the above operations of Russell Hamner were covered by the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq.

The said Russell Hamner did not keep the detailed records required by Regulations, Part 516, issued pursuant to the provisions of the Fair Labor Standards Act, but when requested to do so by the representatives of the Department of Labor, he immediately changed his system of keeping records.

The said Russell Hamner was very cooperative in showing what records he had to the representatives of the Department of Labor.

### Conclusions of Law.

From the stipulated facts, it appears that, during the time covered by the complaint, the defendant, Russell Hamner, was engaged in the saw mill business in Wise County, Virginia, that three of his employees worked more than the prescribed number of hours per week, that they were entitled to overtime pay in the event the operations of defendant were covered by the Fair Labor Standards Act, that no overtime payments were made to these employees, and that therefore the defendant was in violation of the Act if his operations were embraced within the ambit of the Act.

The plaintiff suggests, and I concur in the suggestion, that the facts present three questions of law:

(1) Was the operation of defendant in producing mine props or timbers which he sold to Central Supply Company, which in turn sold them to the Stonega Company which used them in the production of coal for interstate commerce, when the defendant at all times knew that the mine props or timbers produced by him would be used by the Stonega Company in the production of coal for interstate commerce, covered by the Fair Labor Standards Act?

(2) Was the operation of the defendant in producing mine props or timbers for the use of Norton Coal Company in its production of coal which it converted into coke and shipped in interstate commerce, when defendant at all times knew the purpose for which these timbers would be used and that the Norton Coal Company shipped its coke in interstate commerce, covered by the Fair Labor Standards Act?

(3) Was the operation of the defendant, Russell Hamner, in producing rough lumber which he sold to a local lumber concentration yard where it was commingled with other rough lumber purchased from other operators and a substantial part thereof sold in interstate commerce, this fact being known to the defendant at the time he delivered his lumber to the concentration yard, covered by the Fair Labor Standards Act?

It is my conclusion that all three questions must be answered in the affirmative. Authorities might be cited almost endlessly, but I am led to my conclusion primarily by the following authorities: Kirschbaum &c. v. Walling &c., 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, Warren-Bradshaw &c. v. Hall &c., 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83, Mabee &c. v. White Plains &c., 66 S.Ct. 511; Hamlet Ice Co. v. Fleming &c., 4 Cir., 127 F.2d 165, Consolidated Timber Co. v. Womack, 9 Cir., 132 F.2d 101, Walling v. Peoples Packing Co., 10

Cir., 132 F.2d 236, Hanson v. Lagerstrom, 8 Cir., 133 F.2d 120, Bracey &c. v. Luray, 4 Cir., 138 F.2d 8, and Slover v. Wathen &c., 4 Cir., 140 F.2d 258.

■■ Questions (1) and (2) seem to me to be so analogous as to be considered together. It is true that in the first proposition the mine props or timbers passed through an intermediary before being utilized in the production of coal for commerce. However, the intermediate transaction would not seem of importance, because, as was said in Hamlet Ice Co. v. Fleming, supra, (127 F.2d at page 169):

"The fact that the appellant's goods are sold and delivered within the State of North Carolina becomes unimportant in view of the rulings that the incidents of the passage of title do not fix the limits of federal regulation under the Commerce Clause.", (citing many cases).

And in Bracey v. Luray, supra, (138 F.2d at page 11), it was said:

"It makes no difference that the scrap iron handled by plaintiffs was sold by defendant to other scrap dealers before coming into the hands of the steel and ship building companies by whom it was fabricated into ships. This was the destination expected and intended by defendant; and 'the act extends at least to the employer who expects goods to move in interstate commerce.'"

The Act applies if the defendant Hamner and his employees were engaged "in the production of goods for commerce," and in Section 203(j) of the Act it is provided that:

"* * * an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, *or in any process or occupation necessary to the production thereof,* in any State." (Italics mine)

■■ It is a matter of common knowledge that, in the operation of mining bituminous coal, mine props or timbers are "necessary." Such mining operations could not be carried on without them. It is true that the mine props and timbers produced by defendant Hamner and his employees did not themselves actually travel in the stream of commerce, but neither did the "dock" referred to in Slover v. Wathen, supra. In that case, it was held that the watchman who guarded the dock at which barges engaged in commerce were repaired, was covered by the Act. It would seem that the question is not whether the goods produced by an employee themselves moved in commerce, but rather, whether the occupation in which the employee was engaged was "necessary to the production" of goods which were articles of commerce.

■ As to question (3), the cases of Consolidated Timber Co. v. Womack, supra, Walling v. Peoples Packing Co., supra, and Hanson v. Lagerstron, supra, seem particularly applicable. The fact that only a part of the commingled lumber in the concentration yard moved in commerce would seem to be of no importance. Mabee v. White Plains, supra. Under the facts presented by this question, defendant Hamner and his employees actually produced the goods which were intended to, and did in part, move in commerce, and the coverage would seem clear under the authorities cited above.

■ Defendant contends that, even though the court should arrive at the conclusion stated above, there should be no injunction against him because his violations of the Act have been relatively unimportant, that all violations have now ceased, that he has cooperated with the Administrator, and that there is no likelihood of further violations. The question of whether or not, in a given case, an injunction should issue, is within the discretion of the court, Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754, Walling v. Youngerman-Reynolds, 325 U.S. 419, 65 S.Ct. 1242, and the considerations urged by the defendant are appealing. However, here, the defendant continues to maintain that his operations were not covered by the Act, that, although he is now operating in accordance with its provisions, as a matter of law he is free to disregard it if he chooses. As I have reached the contrary conclusion, I am of the opinion that the Administrator is entitled to an adjudication to that effect in the form of an injunctive order. United States v. Trans-Missouri Freight Association, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007.

■ Therefore, an order will be entered enjoining the defendant from further violations of the Act, but in view of his cooperation and all the other circumstances, plaintiff's costs will not be assessed against defendant.