The **PUBLIC BUILDING AUTHORITY OF the CITY OF BIRMINGHAM,** Appellant,

v.

Arthur J. **GOLDBERG,** Secretary of Labor, United States Department of Labor, Appellee.

No. 19056.

United States Court of Appeals Fifth Circuit.

Jan. 25, 1962.

J. M. Breckenridge, Birmingham, Ala., for appellant.

Bessie Margolin, Asst. Sol., Morton Liftin, Atty., Dept. of Labor, Charles Donahue, Sol. of Labor, Jacob I. Karro, Isabelle R. Cappello, Attys., Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty., Dept. of Labor, Birmingham, Ala., for appellee.

Before TUTTLE, Chief Judge and POPE * and GEWIN, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal by the Public Building Authority of the City of Birmingham, an intervenor, from a judgment enjoining minimum wage, overtime and record-keeping violations of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., by Building Management Corporation, one of the three defendants below. The sole question on appeal is whether the employees in question are covered by the Act.

Appellant is a political subdivision of the state of Alabama which was organized for the purpose of providing buildings and facilities for lease by the city, county and the United States. It is the owner of the Social Security Building in Birmingham which is leased to the United States. The building is occupied exclusively by three federal agencies: (1) the Birmingham Payment Center of the Bureau of Old Age and Survivors' Insurance, Social Security Administration; (2) the Birmingham Regional Office of the Bureau of Accounts, Division of Disbursements, United States Treasury; and (3) the Communications Center of the General Services Administration.

The Payment Center "is principally concerned with and directed toward the timely issuance of Social Security benefit checks" to claimants in ten Southeastern states. The employees of the Center process applications for social security benefits and determine whether and to what extent claimants are entitled to benefits. They certify their findings to the Treasury Disbursing Office which is responsible for the actual preparation and mailing of the checks to beneficiaries. In a typical month, the Disbursing Office produces and mails almost two million checks, the great majority of which go to people outside the State of Alabama. The Communications Center is a small office

* Of the Ninth Circuit, sitting by designation.

containing a telephone exchange operated by the General Services Administration.

The Social Security Building is managed by the Building Management Corporation under a contract with the appellant which specifies that the Corporation is the "exclusive agent" of the appellant. Under the contract, the Corporation is required to hire and supervise maids, janitors, nightwatchmen, etc., to maintain and service the building. Apart from having the right to approve the number of employees hired by the Corporation, appellant has nothing whatever to do with the hiring, firing, supervision or payment of these employees. The question on appeal is whether these employees are covered by the F.L.S.A. The District Court held that they are.

The following are the pertinent provisions of the F.L.S.A.:

"Sec. 3. As used in this Act—
* * * * * *

"(b) 'Commerce' means * * * transportation, transmission, or communication among the several States or between any State and any place outside thereof.
* * * * * *

"(d) 'Employer' * * * shall not include * * * any State or political subdivision of a State * *
* * * * * *

"(i) 'Goods' means * * * articles or subjects of commerce of any character * * *

"(j) 'Produced' means produced, manufactured, mined or handled, or in any other manner worked on in any State; and for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State."

An "employer" must comply with the minimum wage, overtime and record-keeping provisions of the Act with respect to all its employees who are "engaged in commerce or in the production of goods for commerce."

It is clear that the employees in question are not engaged in "commerce" as that term is defined in the Act. It is equally clear that these employees are not engaged in the actual production of goods for commerce. If they are covered by the Act, it must be on the theory that the federal employees in the building are engaged in the production of goods for commerce, and that the employees in question are engaged in a "closely related process or occupation directly essential" to that production.

Thus, there are three questions involved in this appeal. First, are the employees in question actually or constructively the employees of appellant, and thereby exempt from coverage because appellant is a political subdivision of a state and not an "employer" within the meaning of that term as defined in the Act? Second, are the federal employees in the building engaged in the production of goods for commerce? Third, if the federal employees are engaged in the production of goods for commerce, are the employees in question engaged in any "closely related process or occupation directly essential" to that production?

■ With respect to the first question, the decided cases make clear that the employees cannot be considered as the employees of the appellant in view of the fact that appellant exercises almost no control over their work. See Powell v. United States Cartridge Co., 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017 and cases cited in 29 U.S.C.A. § 203, notes 119, 123 and 124.

■ The solution to the second question is not so simple. If we were to consider the matter as one of first impression, we would find it difficult to say that conceptually either the Social Security employees, engaged in working up claims and data for the payment or rejection of Social Security benefits, or the Treasury employees actually preparing and mailing

Government checks to beneficiaries, are engaged in the "production of goods" or, if so, for the production of goods for interstate commerce. It just seems somewhat difficult to grasp the concept of a Government employee working on a Social Security Claim as producing goods for commerce. This is partially because the concept of "producing goods" must be stretched to the outermost to include preparation and working on documents and partially because commerce generally has a connotation of business or profit. However, we are not viewing a matter of first impression. It is plain that if we were dealing with the activities of a private organization, such as an insurance company or a bank, we would be compelled to recognize that the courts have held that what these Government employees do would, if done in industry, amount to "production of goods for commerce." See Western Union Telegraph Co. v. Lenroot, 323 U.S. 490, 65 S.Ct. 335, 89 L.Ed. 414; Goldstein v. Dabanian, 3rd Cir., 291 F.2d 208; Darr v. Mutual Life Insurance Company, 2nd Cir., 169 F.2d 262 and Union National Bank of Little Rock, Ark. v. Durkin, 8th Cir., 207 F.2d 848.

The appellee then points out that the fact that the United States Government is the one that is engaged in the transaction does not prevent it from being treated the same as if the goods were being produced by private parties, citing Powell v. United States Cartridge Co., 339 U.S. 497, 70 S.Ct. 755, and the cases involving construction of military air bases and the like. Mitchell v. Empire Gas Engineering Co., 5th Cir., 256 F.2d 781 and Mitchell v. Blanchard, 5th Cir., 272 F.2d 574. These last two cases, of course, stand for the proposition that there need be no private parties or profit motive present to constitute commerce.

█ There is no merit to the suggestion that because the Government employees themselves are exempt under the terms of the Act, the service employees cannot, within the contemplation of the statute, be engaged in an "occupation directly essential" to an activity that would bring them within the Act. We think that this does not follow, for clearly, it is the activities of the employees themselves that determines their status as to coverage. In Borden Co. v. Borella, 325 U.S. 679, at page 684, 65 S.Ct. 1223, 1225, 89 L.Ed. 1865, the Supreme Court said:

"Thus, where, as here, the work of employees (maintaining an office building) is essential or necessary to such executive, administrative or professional activities of a productive nature the employees fall within the purview of Section 7(a) even though those directly engaged in such activities are by express exemption precluded from sharing in its benefits."

We now reach the final question. Appellant relies on the recent Supreme Court decision in Mitchell v. H. B. Zachary Co., 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753 as standing for the proposition that, in the adoption of the 1949 amendment to the Fair Labor Standards Act to require a "closely related process or an occupation directly essential to production" as a substitute for actual production, Congress meant to withdraw from coverage activities such as those here involved.

█ We disagree. We think it is plain that the Zachary case did not mark a withdrawal from the court's previous views as expressed in Kirschbaum Co. v. Walling, 316 U.S. 517, 63 S.Ct. 1116, 86 L.Ed. 1638, that employees whose work was essential to the maintenance of a building devoted to the production of goods for commerce are covered employees. The court distinguished its decision in 10 E. 40th Street Co. v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806, by showing that the building in the 10 E. 40th Street case "was locally owned, held out for general tenancy, and in fact tenanted by a miscellany of tenants." The court made much of the distinction between activities which are strictly local in nature and those being national in importance. It cannot be doubted, we think, that on the basis of this distinc-

tion, the employees performing services for these government occupied buildings in Birmingham fall clearly within the latter rather than the former category.

Although we recognize the difficulties standing in the way of a ready acceptance of the concept that the United States Government employees in these buildings were actually producing goods for commerce, we conclude that the net result of the decisions construing the several provisions of the Fair Labor Standards Act is such as to require us to hold that this is just what they were doing, and that the service employees were thus, as were those in the Kirschbaum case, engaged in an occupation directly essential to this work and that they thus come within the protection of the Act.

Affirmed.