**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Appellant,**

v.

**Elwyn H. FERGUSON, doing business as Elwyn Ferguson Roofing Company, Appellee.**

**No. 19512.**

United States Court of Appeals Fifth Circuit.

Feb. 6, 1963.

On Rehearing April 19, 1963.

---

Morton Liftin, Asst. Sol., of Labor, Beate Bloch, Atty., Dept. of Labor, Charles Donahue, Sol. of Labor, Jacob I. Karro, Acting Asst. Sol. of Labor, Beverley R. Worrell, Regional Atty., Dept. of Labor, Washington, D. C., for appellant.

Wm. R. Frazier, Hill & Frazier, James P. Hill, Jacksonville, Fla., for appellee.

Before RIVES, CAMERON and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

This case presents, in the words of Mr. Justice Frankfurter,[1] "a nice question concerning the scope of the Fair Labor Standards Act, as amended." 29 U.S. C.A. § 201 et seq. Appellant[2] instituted suit in the District Court seeking to enjoin appellee from violating the rate, overtime and record keeping provisions of the Act. 29 U.S.C.A. §§ 206, 207 and 211. Appellee denied coverage. It was undisputed that appellee was not in compliance, if covered. The stipulation of facts by the parties and the testimony of appellee formed the factual basis for the adjudication of the question of coverage. The District Court held that the employees of appellee were not subject to the Act, and dismissed the complaint. This appeal followed.

Appellee is the owner of a roofing company in Jacksonville, Florida. During the applicable period, October 6, 1958 to September 21, 1961, his twenty four employees performed approximately thirty per cent in dollar volume of their work on buildings operated and maintained by and for the use of twenty two specified firms. It was stipulated that these firms:

> "* * * occupied said buildings and made use of facilities of said buildings and such buildings were utilized for interstate or foreign commerce or for the production of goods for interstate commerce, or both."

It was further stipulated, and included in the findings of fact, that during the period involved appellee neither imported raw materials used in the business from without the State of Florida nor engaged in business without the State of Florida. The business of appellee was described in the findings as follows:

> "During the past five or six years, most of Defendant's work has involved small contracts and principally repair work. The Defendant does not subcontract roofing jobs for other construction companies. In the operation of his business, the Defendant does not enter into any continuing or long-term contracts with his customers to maintain the roof on buildings or any other portion thereof, but instead does installation and repair work as and when he is called upon to do so by his customers in the Jacksonville area."

This finding is in large measure based on the testimony of appellee which served to define in some degree, the general

1. Mitchell v. H. B. Zachry Co., 1960, 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753.

2. W. Willard Wirtz, Secretary of Labor, United States Department of Labor, substituted in place and stead of Arthur J. Goldberg, resigned, under Rule 25(d) as amended, Fed.R.Civ.P.

terms of the stipulation.[3] According to his unrefuted testimony, most of the work done in the last five years was repair work. Siding was put on one new building and no subcontracting work was done. He had no contract for continuing services to any of the businesses specified. One roof was put on a new building under construction during the period in suit.

The District Court concluded that the business engaged in by appellee met the common understanding of what constitutes a purely local business not covered by the Act, and that the employees were not engaged in any closely related process or occupation directly essential to the production of goods for commerce within the meaning of the Act. Their activities were too remote from the activities of the occupants of the commercial buildings and not closely enough related thereto to place them in close proximity to commerce within the meaning of the Act.

The question presented is whether the employees of appellee, while engaged in this type of endeavor on buildings utilized for interstate or foreign commerce, or for the production of goods for interstate or foreign commerce, or both, were engaged in commerce or in any closely related process or occupation directly essential to the production of goods for commerce within the meaning of §§ 3(b) and 3(j) of the Fair Labor Standards Act, as amended. 29 U.S.C.A. § 203(b) and (j).[4]

3. "Q. Now, Mr. Ferguson, to get right at what we want, I want you to describe for us as best you can the nature of the operation of your business. What you do, typically, and the products you sell, and for whom you work. Just go right ahead.

"A. Well, we sell roofing, painting, and sheet metal, and some repairs. We get a call from various people to come out and look at their roofs and we fix it, or we repair it if something is broken. That is the nature of our business.

"We do work on houses and we do work on any kind of a building that we have a call for.

"Most of our work in the last 5 or 6 years has been small. We haven't had any contracts that have been very large or long contracts. They have all been short.

"Q. In other words, by 'not large contracts' what do you mean? Like you were going to install a roof on this building?

"A. Yes.

"Q. In other words, as I understand, you do mostly repair work?

"A. Mostly repair, the last 5 years.

"The Court:

"Do you install siding on buildings?

"A. No sir, we don't do any siding. We have put siding on one building, and it was a new building.

"The Court:

"How long ago was that?

"A. About a year ago.

"The Court:

"Do you subcontract roofing jobs for construction work?

"A. No, sir. We don't do any subcontracting work.

"By Mr. Frazier:

"Q. In other words, you are in business for yourself. Right?

"A. Yes, sir.

"Q. Now, Mr. Ferguson, our stipulation in this cause shows that during the period in question you have done work for a number of local businesses here in Jacksonville. You have seen that stipulation, have you not?

"A. Yes.

"Q. In connection with the work that you have done, did you have any contract for continuing services with any of those businesses?

"A. No, sir.

"Q. For example, did you have a contract to maintain a roof for a year or two years? Something of that sort?

"A. No, sir.

"Q. Well, how did it operate? Give us a typical example. One of the businesses shown there was Florida Machine & Foundry. What did you do for them?

"A. Well, mostly we worked on their metal roofs; painting them and coating them. And over a period of maybe—I think we did put this one new roof on, on the building they were building—their new building. That's all. But most of it has been just repairs.

"Q. The one roof you put on was on a new building under construction.

"A. That's right.

"Q. The rest was repairs to existing buildings that they used.

4. "(b) 'Commerce' means trade, commerce, transportation, transmission, or commu-

Our determination of this question must be based on the activities of the employees and not upon the nature, local or interstate, of the business of the employer. Congress confined coverage under the Act to employment in commerce or in the production of goods for commerce, or in any closely related process or occupation directly essential to production of goods for commerce. It did not attempt to occupy the whole field of employment under the Commerce Clause but left an area for state jurisdiction. Mitchell v. H. B. Zachry Co., 1960, 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753; and Mitchell v. Lublin, McGaughy & Associates, 1959, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243.

In our view this case turns on whether the activities of the employees were so local in nature as not to be closely related or directly essential to the production of goods for commerce, and also so remote from commerce as not to be within the coverage of the Act. And the touchstone is the fact that the activities were sporadic, infrequent, isolated and purely local in scope. The work here, mainly roofing repairs, was not performed pursuant to a continuing contract or arrangement, or on a continuing basis, but at the request of the customer when and if needed, and upon choice of appellee as the repairman.

If it is true, as it undoubtedly is, that Congress meant to leave a part of this field to state regulation, it is the duty of the courts to draw the line between those employment activities covered, and those of purely local nature left to the state. 10 East 40th Street Building, Inc. v. Callus, 1945, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806. And we take it as undisputed that appellee was a local roofer much as a local plumber, or electrician,

or furnace repairman, or painter, or carpenter or the like, holding himself out for call as needed and his employees were engaged in doing such work as he was offered and accepted. The line must be between activities purely local in nature, done on an infrequent, isolated, sporadic basis by employees of an outside repairman when and if selected as repairman, as distinguished from a regular and continuing basis or nexus with commerce or the production of goods for commerce so as to be in commerce, or amounting to such support of the production process as to be closely related and directly essential to it.

The Supreme Court put it well by saying in 10 East 40th Street Building, Inc. v. Callus, supra:

"On the terms in which Congress drew the legislation we cannot escape the duty of drawing lines. And when lines have to be drawn they are bound to appear arbitrary when judged solely by bordering cases. To speak of drawing lines in adjudication is to express figuratively the task of keeping in mind the considerations relevant to a problem and the duty of coming down on the side of the considerations having controlling weight. Lines are not the worse for being narrow if they are drawn on rational considerations. It is a distinction appropriate to the subject matter to hold that where occupations form part of a distinctive enterprise, such as the enterprise of running an office building, they are properly to be treated as distinct from those necessary parts of a commercial process which alone, with due regard to local regulations, Congress dealt with in the Fair Labor Standards Act."

---

nication among the several States or between any State and any place outside thereof."

"(j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee . shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State."

There the employer was engaged in renting and maintaining an office building, twenty six per cent of the rentable space of which was occupied by firms engaged elsewhere in the production of goods for commerce, and from which offices the corporate policy of these firms was formed and directed. An additional six and one-half per cent of the space was used for the production of goods for commerce. Fifty eight per cent of the space was occupied by firms not engaged in commerce, or in the production of goods for commerce. The employees were regularly engaged in maintenance work, as watchmen, elevator starters, and window cleaners in the building.

We hold that the distinction as drawn on the facts before us between regular and continuous repair and maintenance service on the one hand, and the sporadic, isolated and infrequent activity of a local repairman on the other is one "appropriate to the subject matter" causing the activity of appellee to be a "distinctive enterprise" remote from commerce, and not a closely related process or occupation directly essential to the production of goods for commerce.

This distinction is based on the coverage provisions of the Act itself as they have been construed by the Supreme Court:

"* * * For the Act also manifests the competing concern of Congress to avoid undue displacement of state regulation of activities of a dominantly local character. Accommodation of these interests was sought by the device of confinement of coverage to employment in activities of traditionally national concern. The focus of coverage became 'commerce,' not in the broadest constitutional sense, but in the limited sense of § 3(b) of the statute: 'trade, commerce, transportation, transmission, or communication among the several States * * *.' Employment 'in' such activities is least affected by local interests. A step removed from employment 'in commerce' is employment 'in' production which is 'for' commerce. Under this clause we have sustained coverage whether the product is to be consumed primarily by commerce in the statutory sense, by its 'facilities and instrumentalities,' see Alstate Construction Co. v. Durkin, 345 U.S. 13, [97 L.Ed. 745, 73 S.Ct. 565,] or, as in the case of the products of the industrial consumers of water here, to move in it. Furthest removed from 'commerce' is employment not 'in' production 'for' commerce but in an activity which is only 'related' to such production. In applying this provision, we have necessarily borne in mind that it is furthest removed in the scheme of the statute from the hub of the national interest in 'commerce' upon which a limited displacement of state power is predicated.

"The amendment of § 3(j) in 1949 did not alter the basic statutory scheme of coverage, but did reinforce the requirement that in applying the last clause of the section its position at the periphery of coverage be taken into account as a relevant factor in the determination. In revising coverage Congress turned only to the last clause of the section, which it evidently continued to regard as marking the outer limits of applicability." Mitchell v. H. B. Zachry Co., supra.

What is involved here is local activity or employment left to the states under the Act because of being too remote from the channels of commerce. We are not concerned with a distinction between new construction, not covered, and repairs, additions or modifications to existing facilities which are covered. See Mitchell v. H. B. Zachry Co., supra; Murphey v. Reed, 1948, 335 U.S. 865, 69 S.Ct. 105, 93 L.Ed. 410, reported below sub. nom. Reed v. Murphey, 5 Cir., 1948, 168 F.2d 257; J. F. Fitzgerald Construction Co. v. Pedersen, 1945, 324 U.S. 720, 65 S.Ct. 892, 89 L.Ed. 1316; and Parham v. Austin Co., 5 Cir., 1946, 158 F.2d 566.

See also annotations in 99 L.Ed. 1202 and 8 A.L.R.2d 738.

The courts have the responsibility to carve out the domain left to the states under the Act. To do so requires a consideration of all of the circumstances surrounding the particular activity and its relation to commerce. The District Court in the first instance makes the judgment. It was here made in favor of the employer. We believe the result to be a correct application of the facts to the law as it now exists. It follows therefore, that the judgment appealed from should be, and it is

Affirmed.

RIVES, Circuit Judge (dissenting).

The majority opinion quotes in toto one of the findings of fact (number 7), and the testimony of the appellee upon which that finding is based, but undertakes to summarize the other findings (numbers 1 through 6) which were based upon stipulations of the parties. The issue is important; the findings are not very long, and I quote at length those which were not quoted by the majority:

"1. The Defendant, Elwyn H. Ferguson, resides at 7125 Salamanca Avenue, Jacksonville, Duval County, Florida, and is now and at all times material to this action was the sole owner and proprietor of Elwyn Ferguson Roofing Company, having its principal place of business at 45 Broad Street Viaduct, Jacksonville, Duval County, Florida, where he is and at all times material to this action was engaged in the business of installing, repairing and modifying commercial, industrial and residential roofs, siding and making other repairs to buildings of all types.

"2. At all times material to this action, the Defendant employed and is employing approximately 24 employees in installing, repairing and moditying (sic) roofs and siding and making other repairs on commercial, industrial and residential buildings in the Jacksonville area.

"3. Regularly and throughout the period of time involved in this cause, that is, during the period since October 6, 1958, approximately 30 per cent in dollar volume of the work performed by the Defendant's employees consists of the installation of roofs and siding on buildings, which, at the time the work was performed, were operated and maintained by and for the use of the following firms, individuals and corporations located in the Jacksonville area:

"Boone Terminal Warehouses.

"Florida Machine & Foundry.

"Heichhold Chemicals, Inc.

"Central Truck Lines.

"Jacksonville Box Co.

"Monticello Drug Co.

"Railway Express.

"Duval Barrel and Bottle Company.

"N & L Auto Parts Co.

"Commodore Point Terminal.

"Fla. Feed Mills.

"Wright's Supply Co.

"K & G Box Co.

"Daylight Grocery Co.

"Flowers Baking Co.

"The E. B. Malone Co.

"Tire Mart National Fleet Service.

"Wilson-Toomer Fertilizer Co.

"Hershey Sugar Co.

"B. F. Goodrich Tire Co.

"Jacksonville Ginter Box Co.

"C. I. Capps Foundry.

"4. The above-named firms occupied said buildings and made use of the facilities of said buildings, and such buildings were utilized for interstate or foreign commerce or for the production of goods for interstate commerce, or both.

"5. During the period involved in the instant litigation, the Defendant did not import from without the State of Florida any of the raw ma-

terials and supplies which were utilized in the operation of his business.

"6. During the period involved in the instant litigation, the Defendant did not engage in business without the confines of the State of Florida."

The majority says "* * * the touchstone is the fact that the activities involved were sporadic, infrequent, isolated and purely local in scope." With deference, I submit that simply does not square with the facts as stipulated and as found by the district court. "Regularly and throughout the period of time * * *" about 30 per cent in dollar volume of the total volume of work performed by the employees was on buildings "utilized for interstate or foreign commerce or for the production of goods for interstate commerce, or both." The period of time involved was October 6, 1958 to September 21, 1961. If during that period a substantial part of the activities of the employees was in commerce or in the production of goods for commerce, the employees were covered by the Act, and it is not material that their duties also included noncovered activities pertaining to residential buildings. Walling v. Jacksonville Paper Co., 1943, 317 U.S. 564, 572, 63 S.Ct. 332, 87 L.Ed. 460; Stewart-Jordan Distributing Co. v. Tobin, 5 Cir., 1954, 210 F.2d 427, 432; Opelika Royal Crown Bottling Co. v. Goldberg, 5 Cir., 1962, 299 F.2d 37, 40. The findings on stipulated facts that the employees were engaged in the pertinent activities regularly throughout the period of three years go far beyond the workweek period upon which overtime is computed.

"§ 207. *Maximum hours*

"(a) (1) Except as otherwise provided in this section, no employer shall employ any of his employees who *in any workweek* is engaged in commerce or in the production of goods for commerce *for a workweek* longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed * * *." (Emphasis supplied.) [1]

Thirty per cent in dollar volume was unquestionably a substantial part of the activities of the employees. The real question is whether that 30 per cent was either in commerce or in the production of goods for commerce.

Kirschbaum Co. v. Walling, 1942, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, held the Act applicable to employees engaged in the maintenance and operation of a building whose tenants were engaged principally in the production of goods for commerce. The final clause of Section 3 (j) of the Act at that time included employees engaged "in any process or occupation necessary to the production thereof." The Court held that the employees were engaged in occupation "necessary to the production" of goods for commerce because "the maintenance of ·a safe, habitable building is indispensable to that activity." 316 U.S. at 524, 62 S.Ct. at 1120. The 1949 Amendment substituted for the pertinent phrase above-quoted the words, "in any closely related process or occupation directly essential to· the production thereof." The Supreme Court has held: "The amendment substantially adopts the gloss of Kirschbaum to indicate the scope of coverage of activities only 'related' to production." Mitchell v. H. B. Zachry Co., 1960, 362 U.S. 310, 317, 80 S.Ct. 739, 744, 4 L.Ed. 2d 753.

This Court in Public Building Authority of Birmingham v. Goldberg, 5 Cir., 1962, 298 F.2d 367, held that employees

---

1. The subsection is quoted as amended May 5, 1961, effective upon the expiration of 120 days thereafter, that is on September 3, 1961, Pub.L. 87–30, § 6, 75 Stat. 69. That amendment inserted the phrase "in any workweek," but the phrase "for a workweek" was already in the subsection. In any event, the injunctive relief prayed is prospective, and should be based on the law in effect at the date of the final decree, September 21, 1961.

engaged in maintaining and servicing a building which was leased to federal agencies and in which federal employees produced goods for commerce were engaged in an occupation "directly essential to the production" of such goods, and said in part:

> "We think it is plain that the Zachry case did not mark a withdrawal from the court's previous views as expressed in Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, that employees whose work was essential to the maintenance of a building devoted to the production of goods for commerce are covered employees." 298 F.2d at 370.

The distinction which the majority considers controlling is thus expressed in its opinion:

> "We hold that the distinction as drawn on the facts before us between regular and continuous repair and maintenance service on the one hand, and the sporadic, isolated and infrequent activity of a local repairman on the other is one 'appropriate to the subject matter' causing the activity of appellee to be a 'distinctive enterprise' remote from commerce, and not a closely related process or occupation directly essential to the production of goods for commerce."

I have already expressed the view that the statement that the activity was "sporadic, isolated and infrequent" is diametrically opposite to the admitted facts of this case. The majority repeatedly emphasizes the idea that the appellee was "a local repairman." For example, earlier in the opinion appears the following:

> "And we take it as undisputed that appellee was a local roofer much as a local plumber, or electrician, or furnace repairman, or painter, or carpenter or the like, holding himself out for call as needed and his employees were engaged in doing such work as he was offered and accepted."

It is settled, however, that in determining the Act's coverage, "we focus on the activities of the employees and not on the business of the employer." Mitchell v. Lublin, McGaughy & Associates, 1959, 358 U.S. 207, 211, 79 S.Ct. 260, 263, 3 L. Ed.2d 243. The same type of argument was answered by the Supreme Court in Kirschbaum Co., thusly:

> "The petitioners assert, however, that the building industry of which they are part is purely local in nature and that the Act does not apply where the employer is not himself engaged in an industry partaking of interstate commerce. But the provisions of the Act expressly make its application dependent upon the character of the employees' activities. And, in any event, to the extent that his employees are 'engaged in commerce or in the production of goods for commerce,' the employer is himself so engaged." 316 U.S. at 524, 62 S.Ct. at 112.

The majority emphasizes also that siding was put on one new building, one roof on a new building, and that most of the work was repair work. Maintenance and repairs, however, occupy a closer relation to operation of the buildings than does new construction. As said in Mitchell v. H. B. Zachry Co., supra, 362 U.S. at 319, 80 S.Ct. at 745:

> "Assuming *arguendo* that maintenance and repair of the completed dam would be covered employment, it does not follow that construction of the dam therefore is. The activities are undoubtedly equally 'directly essential' to the producers of goods who depend upon the water supply; but they are not equally remote from production or from the 'commerce' for which production is intended. The distinction between maintenance and repair on the one hand, and replacement or new construction on the other, may often be difficult to delineate but is a practical distinction to which law must not be indifferent. Its relevance here, where our purpose must be to isolate

primarily local activities from the flow of commerce to which they invariably relate, lies in the close relation of maintenance and repair to operation, as opposed to replacement or new construction which is a separate undertaking necessarily prior to operation and therefore more remote from the end result of the process. * * * "

The Kirschbaum case involved a building used in the production of goods for commerce. The buildings in the present case "were utilized for interstate or foreign commerce or for the production of goods for interstate commerce, or both." If repair of a building used in the production of goods for commerce is within the coverage of the Act, then, a fortiori, repair of a building used in commerce is covered. Mitchell v. H. B. Zachry Co., supra, 362 U.S. at 316, 80 S.Ct. at 743.

I am convinced that the judgment should be reversed, and therefore respectfully dissent.

## ON PETITION FOR REHEARING

### PER CURIAM.

The Secretary of Labor on motion for rehearing vigorously contends, as did Judge RIVES in his dissenting opinion, that the facts of this case fail to demonstrate that the activities in question here were sporadic, infrequent, isolated and purely local in scope and thus not within the coverage of the Act.

In substantiation of this position, our attention has been called to the answers of appellee roofing company to certain requests for admissions and interrogatories. These were not a part of the printed record and have not heretofore been called to our attention, nor were they called to the attention of the District Court where the case was tried in a broadsword manner.* Indeed, they were not offered in evidence. The Secretary depended on a stipulation, expressed in general terms with no statement anywhere even of the dollar volume of business done by appellee, to prevail. Appellee relied on his own testimony which, in the view of the majority of this court

and the District Court, having in mind that the burden of proof was on the Secretary, was sufficiently particularized to indicate activity of a local nature. However, it is apparent from the record that the stipulation regarding work on buildings used in interstate and foreign commerce, and for the production of goods for such commerce was in large measure based on these answers.

The admissions relate to a partial list of appellee's sales invoices for the period October 6, 1958 to October 6, 1960. This list demonstrates with some specificity frequent and recurring services during the two year period with regard to several of the twenty two interstate firms with whom appellee did thirty percent of whatever his business was during the period in suit, October 6, 1958 to September 21, 1961. The following table based on a comparison of the invoices with the names of these interstate firms make this clear:

| Firm | Number of Invoices |
| --- | --- |
| Florida Machine & Foundry | 47 |
| Boone Terminal Warehouses | 16 |
| Flowers Baking Co. | 14 |
| N & L Auto Parts Co. | 10 |
| Fla. Feed Mills | 9 |
| Jacksonville Ginter Box Co. | 9 |
| Daylight Grocery Co. | 8 |
| Tire Mart National Fleet Service | 8 |
| Jacksonville Box Co. | 7 |
| Monticello Drug Co. | 6 |
| Railway Express | 4 |
| Wilson-Toomer Fertilizer Co. | 4 |
| Heichhold Chemicals, Inc. | 2 |
| Central Truck Lines | 2 |
| Wright's Supply Co. | 2 |
| Commodore Point Terminal | 1 |
| K & G Box Co. | 1 |
| The E. B. Malone Co. | 1 |
| Hershey Sugar Co. | 1 |
| B. F. Goodrich Tire Co. | 1 |
| C. I. Capps Foundry | 1 |
| Duval Barrel and Bottle Company | 0 |

The dates of the invoices as they relate to each firm indicate the frequency of service, and, of course, the amount of each goes to the question of the employee activity on the particular job.

The answer, in response to an interrogatory, shows that the only records available as to employee hours worked for these firms had to do with Boone Terminal Warehouse for six separate weekly periods. Seventeen of the twenty four employees of appellee rendered services on the property of this firm during one or more of these weeks. For a case involving the consideration of evidence of this kind, although having to do with a different type employee activity, see Roland Electric Co. v. Walling, 1946, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383.

 The law is, as both the majority and dissenting opinions point out, that coverage depends on the activities of the employees and not upon the nature, interstate or local, of the business of the employer. And as the Secretary points out in his rehearing brief, any injunction issued would apply to only those employees covered and then only during those workweeks when so engaged, citing Tobin v. Alstate Construction Co., 3 Cir., 1952, 195 F.2d 577, affirmed sub nom. Alstate Construction Company v. Durkin, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745.

██ A litigant ordinarily does not get a second chance to try his case where he foregoes putting in evidence, but there is a sharp conflict on the court as to the inferences to be drawn from the sparse evidence introduced on the first trial. And, in light of the importance of the question presented, we think the ends of justice would be better served by vacating our opinion in this matter so that the case may be remanded to the District Court for a new trial. There it is to be reconsidered and determined on the basis of all available, relevant, admissible evidence which either party may care to offer in an effort to finally sustain his position.

The motion for rehearing is granted. Our judgment heretofore rendered is vacated and set aside. The judgment appealed from is reversed, and the case is remanded for further proceedings not inconsistent herewith.

Reversed and remanded.