**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiffs,**

v.

**Joseph CANNARELLA and Paul Cannarella, Defendants.**

**Civ. A. No. AC–1019.**

United States District Court
E. D. South Carolina,
Columbia Division.

July 29, 1964.

Beverley R. Worrell, Regional Attorney, U. S. Department of Labor, O. H. Williams, U. S. Department of Labor, Anthony Cuviello, U. S. Dept. of Labor, Atlanta, Ga., for plaintiffs.

Robert J. Thomas, Frank G. Tompkins, Columbia, S. C., for defendants.

HEMPHILL, Chief Judge.

This action was instituted by the Secretary of Labor who seeks to recover wages on behalf of Otis Washington, an employee of defendants who operate the Dixie Fish and Oyster Company in Columbia, South Carolina. This action was brought under the provisions of Section 16(c) of the Fair Labor Standards Act of 1938, as amended (hereinafter referred to as the "Act"), 29 U.S.C. § 216(c). Plaintiff seeks to recover $735.00 unpaid minimum wages under the theory that the defendants employed Otis Washington in "commerce", within the meaning of the Act, and failed to compensate him for such employment at the rate of not less than $1.00 an hour in each workweek of his employment as required by Section 6 of the Act. 29 U.S.C. § 206.

This matter was heard by the Court, without a jury.

This action was instituted by the Secretary pursuant to written request filed by Otis Washington, who was employed by defendants during the period from the workweek ending September 9, 1961, through the workweek ending July 14, 1962. Defendant did not keep daily and

weekly records reflecting the hours of Washington's employment; he was paid a straight salary of $40.00 per week for the first thirty-three weeks, and $50.00 per week for the remaining twelve weeks in question. Otis Washington normally worked six days per week and defendant Joseph Cannarella testified that he worked fifty-nine hours per workweek throughout the period of employment.

Otis Washington's employment during the period involved aggregates 2,655 hours. For this 2,655 hours of work, Washington was paid $1,920.00. Thus, if plaintiff's contentions are correct, i. e., that wages should have been paid at the rate of one dollar an hour, defendants should have paid over to Washington $2,655.00. Hence, the amount in dispute is $735.00; the sum prayed for in the complaint.

■ The question before the Court is whether or not Otis Washington was engaged in "commerce", within the meaning of the Act. "Congress confined coverage under the Act to employment in commerce * * *." Wirtz v. Ferguson, 317 F.2d 343, 346 (5th Cir. 1963). " * * * (C)overage depends on the activities of the employees and not upon the nature, interstate or local, of the business of the employer." Id. at 352 of 317 F.2d. The character of the employee's activity controls. Kirschbaum Co. v. Walling, 316 U.S. 517, 524, 62 S.Ct. 1116, 1120, 86 L.Ed. 1638; Walling v. Jacksonville Paper Co., 317 U.S. 564, 571, 63 S.Ct. 332, 336, 87 L.Ed. 460. Of course, the Court cannot overlook the employer's business, because the employee's activities are a function, an integral part, of that business.

There can be no doubt but that the employer is engaged in interstate commerce. Defendant testified on the stand that most of the seafood products which his firm sells came from outside the State of South Carolina. Defendants' business records, which reflected their purchases during the time in question, reveal that $137,737.76 worth of seafood products were bought in States other than where their business is located;[1] whereas, only $1,379.15 was spent in South Carolina. Thus, over 98 per cent of the products defendants sold were acquired outside the State.

■ The basic question still remains: was the individual employee's activity in "commerce" within the meaning of the Act? The evidence before the Court clearly places Washington's activities within the purview of the Act. Defendant Joseph Cannarella testified that Washington made up orders, kept the place clean, "helped receive fish", explaining that this meant taking containers off the back-ends of trucks and placing them in coolers. Cannarella testified that during the busy season (winter months) there were five or six deliveries per week, and during the slack season, one to three deliveries a week; and, he said that Washington unloaded the trucks at least "half the time." He further testified that he did not segregate the interstate activities from the intrastate activities. Washington's testimony aside from noting that he worked in the "wholesale" department, reflected more involvement in interstate commerce than that which defendant Cannarella was willing to testify.

■ Nevertheless, there is enough testimony from Defendant Cannarella to properly conclude that the employee, Otis Washington, was engaged in "commerce" within the meaning of the Act. An employee who unloads or stores goods received from out-of-state is engaged in "commerce" within the meaning of the Act. Walling v. Jacksonville Paper Co., 317 U.S. 564, 568, 63 S.Ct. 332, 335. "(I)t is established that the unloading of interstate shipments is an activity in interstate commerce." McComb v. Herlihy, 161 F.2d 568, 570 (4th Cir. 1947). It is true that "the work of an employee in interstate commerce must be substantial in order to entitled him to the protec-

1. The States are: Louisiana, Florida, Georgia, North Carolina, Virginia, Maryland, Pennsylvania, New Jersey, New York, Massachusetts, and Maine.

tion of the statute." Crook v. Bryant, 265 F.2d 541, 544 (4th Cir. 1959). In the instant case, defendant testified that Washington unloaded the trucks at least "half the time." Under the interpretation given the Act in numerous decisions, this alone is sufficiently "substantial" to hold that the employee was acting "in commerce." Of course, there is further testimony that Washington made up wholesale orders and helped place the fish in the freezer when the shipments arrived. Cf. Walling v. Jacksonville Paper Co., supra.

Defendant testified that he did not attempt to segregate any of the activities of his business, i. e., interstate from intrastate. The law is clear "that if an employee's duties are partly intrastate and partly interstate, his entire compensation must conform to the provisions of the statute. * * * In this circuit (it has been) specifically held that an employee so engaged is completely covered by the Act as to all of his activities when the two classes are commingled in the employer's operations and he makes no attempt to distinguish between the two in the payment of wages." Crook v. Bryant, supra, at 544 of 265 F.2d; citing Guess v. Montague, 140 F.2d 500, 504 (4th Cir. 1943); Tobin v. Blue Channel Corp., 198 F.2d 245, 248 (4th Cir. 1952).

The Court therefore finds that during each week of his employment by defendants, Otis Washington was engaged "in commerce," within the meaning of the Act, and by virtue of said employment he is entitled to receive wages of at least $1.00 an hour for each hour of his employment.

Since defendants admittedly paid Otis Washington $40.00 per week of 59 hours for 33 workweeks, and $50.00 per week of 59 hours for 12 workweeks, it follows, therefore, that plaintiff is entitled to recover from defendants the amount of $735.00.

Accordingly, it is ordered that plaintiff recover from defendants the amount of $735.00.

And it is so ordered.