Lorenzo BATTS, Louise Davis and Mary McDade, Plaintiffs,

v.

PROFESSIONAL BUILDING, INC., a corporation, Defendant.

Civ. A. No. 2348.

United States District Court
S. D. West Virginia,
Huntington Division.

Nov. 21, 1967.

A. M. Foose, Huntington, W. Va., for plaintiffs.

James R. Bailes, Campbell, McNeer, Woods, Bagley & Emerson, Huntington, W. Va., for defendant.

CHRISTIE, District Judge:

This is a suit for recovery of minimum wages and liquidated damages under the Fair Labor Standards Act, 29 U.S.C.A. Section 201 et seq. Plaintiffs are employees of defendant, Professional Building, Inc., an office building tenanted by various professional and commercial of-

fices. Lorenzo Batts is employed as a janitor and Louise Davis and Mary McDade are employed as elevator operators in the building. We are presently concerned with defendant's motion for summary judgment, which alleges, on the basis of the pleadings, a stipulation filed herein, and the affidavits submitted by the parties, that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law.

## I

## FACTUAL BACKGROUND

The facts culminating in the present dispute may be summarized as follows:

The Professional Building is a six-story office building located in Huntington, West Virginia. Space in this building is rented to members of the medical profession and persons in closely related professions and businesses. At present, and during the time relevant to this proceeding, the Professional Building was tenanted by eleven doctors and dentists, a medical laboratory technician, and two commercial establishments. One of the commercial establishments, Jahnig Manufacturing Company, Inc., manufactures orthopedic and prosthetic appliances. The articles manufactured and sold by Jahnig, including braces, artificial limbs and corrective shoes, are normally made to fit the needs of each individual patient and must be fitted prior to sale. As a consequence of this procedure, the bulk of Jahnig's sales are made to purchasers within the State of West Virginia. Sales to out-of-state purchasers normally account for less than 3% of Jahnig's total sales. The remaining commercial establishment, the Huntington branch of L. D. Caulk Company, is a retailer of dental supplies and equipment. L. D. Caulk Company is a Delaware corporation duly qualified to do business in the State of West Virginia. Goods are neither manufactured nor produced by this company at its offices in the Professional Building. Dental supplies and equipment, ranging from dental chairs to gauze, are sold directly to dentists and dental laboratories. The offices of both Jahnig and L. D. Caulk Company are located on the first floor of the office building.

Lorenzo Batts, in his capacity as janitor, is responsible for cleaning the building lobby and stairwell and the first floor offices which include the offices and storerooms of Jahnig and L. D. Caulk Company. In addition to these duties, he is responsible for certain light maintenance work, such as replacing light bulbs, installing toilet paper and paper towels, et cetera. The Professional Building is equipped with a single elevator. Louise Davis and Mary McDade are employed on alternate shifts to operate this elevator during business hours. The elevator operator working the latest shift is responsible for closing and locking the building.

In addition to their regular duties as janitor and elevator operators, respectively, plaintiffs allege that they regularly accept registered letters, special delivery letters, and parcel post packages addressed to tenants in the building, receipt therefor and deliver same to the tenants. Packages delivered to the building by commercial carrier are also allegedly handled in this same manner. A dispute exists concerning whether or not these services are regularly provided by the plaintiffs to the building tenants.

## II

## COVERAGE UNDER THE FAIR LABOR STANDARDS ACT

Under Section 6 of the Act, 29 U.S.C.A. Section 206, an employer must pay prescribed minimum wages "to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce * * *." Section 3(b), 29 U.S.C.A. § 203(b), defines commerce as "trade, commerce, transportation, transmission, or communication among the several States * * *" and section 3(j), 29 U.S.C.A. § 203(j), provides that

"'Produced' means produced * * or in any other manner worked on * * * and for the purposes of this

chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, *or in any closely related process or occupation directly essential to the production thereof, in any State."* (Emphasis added.)

In adopting the phrase "engaged in commerce or in the production of goods for commerce" rather than "engaged in commerce in any industry affecting commerce," Congress chose to exercise only part of its constitutional power over commerce, "leaving to the States activities which, if isolated, are only local." Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638 (1942). Thus, in the absence of any "constitutional criteria" or preliminary administrative judgments such as provided under the National Labor Relations Act, the courts must assume the responsibility of construing the general terms of the Act in determining whether particular situations fall within or without the regulated area. Such responsibility requires the "drawing of lines" which in borderline cases sometimes appear arbitrary, but which nevertheless must be drawn on the basis of the larger considerations of national policy, legislative history, and administrative practicalities as well as the particular facts of each individual case. 10 East 40th Street Building, Inc. v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806 (1945).

■ (A) *Engaged in Commerce:* In resolving questions of coverage under the Fair Labor Standards Act, it is the activities of the employee rather than those of the employer which are decisive. Thus, although the employer's establishment might be described as "purely local," if in the course of his employment the employee of necessity engages in commerce or in the production of goods for commerce, his eligibility for coverage under the Act is thereby established. Kirschbaum Co. v. Walling, supra.

■■ The standards by which it is determined whether or not an individual is engaged *in commerce* are "obviously more exacting than the test of whether his occupation is necessary to production for commerce." Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944). As propounded by the courts, the test is said to be "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." Mitchell v. Lublin, McGaughy & Associates, 358 U.S. 207, 212, 79 S.Ct. 260, 264, 3 L.Ed.2d 243 (1959); Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196 (1955). Plaintiffs rely upon their activities with respect to the delivery of packages and mail to the various tenants in support of their claim that they are "engaged in commerce" as that term is used in the Act. Mr. Justice Douglas has remarked in the case of Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460 (1942), that in passing the Fair Labor Standards Act Congress clearly intended "to extend federal control in this field throughout the farthest reaches of the *channels of interstate commerce."* (Emphasis added.) An examination of the cases reveals that the courts have been more than willing to accommodate this objective. Thus, where porters employed in an office building accepted, on behalf of the tenants, freight and express shipments (a substantial part having moved in interstate commerce) and carried them to their respective offices, the Court, in Wirtz v. Columbian Mutual Life Insurance Company, 246 F.Supp. 198 (W.D. Tenn.1965), held that as a result of such activities the porters were engaged in commerce and, therefore, entitled to the benefits of the Fair Labor Standards Act. Other courts in similar situations have concluded that activities such as those engaged in by the porters in Wirtz v. Columbian Mutual Life Insurance Company, supra, qualify as being "in commerce" within the meaning of the Act. Sucrs. De A. Mayol & Co., Inc. v.

Mitchell, 280 F.2d 477 (1960); Wirtz v. Cannarella, 233 F.Supp. 572 (E.D.S.C. 1964); Mitchell v. Royal Baking Company, 219 F.2d 532 (5th Cir. 1955); Mc-Comb v. Herlihy, 161 F.2d 568 (4th Cir. 1947). Although the courts have responded favorably to the suggestion that employees accepting and moving freight and express shipments are in fact engaged in commerce, nevertheless, such a finding does not necessarily follow from the mere fact that an employee has on occasion engaged in such activity. The activity of the employee that brings him within the protection of the Act must be more than sporadic or isolated instances of conduct which might otherwise be considered in commerce under the decisions of the aforementioned cases. Stated more positively, "the work of an employee in interstate commerce must be substantial in order to entitle him to the protection of the statute." Wirtz v. Cannarella, supra, 233 F.Supp. at 573–574; Crook v. Bryant, 265 F.2d 541 (4th Cir. 1959).

■ It is in the light of this requirement of "substantial" work that we must now examine the activities which plaintiffs allege bring them within the requirements of the Act. Plaintiffs allege that they receive packages and mail and deliver them to the tenants in the building "about every day of the week." In addition, plaintiffs allege that they aid in transporting other articles such as X-ray developer solutions and supplies to the offices of the various tenants. Shipments of supplies necessary for the maintenance of the building are received and stored by the plaintiffs. Defendant has submitted affidavits from several tenants in the building which tend to cast doubt on the truthfulness of plaintiffs' assertions in this regard, however, it is neither the duty, nor within the power, of this Court, to resolve such conflicts in the evidence upon a motion for summary judgment. Indeed, where, as in the instant case, a dispute exists as to a material fact involved in the litigation, the motion for summary judgment—at least with respect to the particular issue raised—must be denied. Stevens v. Howard D. Johnson Co., 181 F.2d 390 (4th Cir. 1950); Moore, Federal Practice, Section 56.04(1) (2nd Ed. 1965).

■ Based upon the assumption that plaintiffs have engaged in commerce as claimed, defendant asserts that it has never contracted with its tenants to provide such service nor has it instructed or requested plaintiffs to accept and deliver mail or other articles to the building's tenants. Obviously, an employee may not unilaterally undertake to engage in activities beyond the scope of his employment which have the effect of bringing him within the provisions of the Act when he would not have otherwise been so classified. "Employee" is defined in Section 203(e) as including "any individual employed by an employer." However, even under this broad definition of employee the courts have limited the scope of the covered activity to work which is undertaken with the employer's knowledge and consent, express or implied. Fox v. Summit King Mines, Limited, 143 F.2d 926 (9th Cir. 1944). The Supreme Court, in Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944), has defined employment in the following manner:

"* * * physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."

It is thus apparent that acts to which the employer had not consented and of which he had no knowledge cannot by themselves bring an employee within the provisions of the Fair Labor Standards Act. But plaintiffs have introduced the affidavit of Elizabeth Poole, Secretary-Treasurer of defendant corporation during the period in question, which indicates the possibility that the employer was not entirely unaware of at least some of the delivery activities in which plaintiffs were engaged. Viewing the record as we must, in the light most favorable to the party in opposition to the motion

for summary judgment, it cannot be said that the question of defendant's knowledge and at least implied consent to the questioned activities is free of dispute. Accordingly, defendant's motion for summary judgment with respect to this issue must be denied.

(B) *Employment Closely Related and Directly Essential to the Production of Goods for Commerce:* Employees engaged in "the production of goods for commerce" as well as those "engaged in commerce" are covered by the Act, and it is provided that "produced" shall be understood to include not only employees engaged in "producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods," but also employees engaged "in any closely related process or occupation directly essential to the production thereof * * *." Obviously, plaintiffs are not engaged in the production of goods as defined by the phrase "producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods." However, the Courts have held in certain factual situations that maintenance employees, elevator operators and the like are within the intendment of the phrase "closely related process or occupation directly essential to the production thereof," and thus entitled to the protection of the Act.

In Kirschbaum Co. v. Walling, supra, the Supreme Court held that employees engaged in the operation and maintenance of a loft building in which *large quantities* of goods for interstate commerce were produced had such "a close and immediate tie with the process of production for commerce" and were "so much an essential part of it," the employees should be regarded as engaged in an occupation "necessary to the production of goods for commerce." In Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865, 161 A.L.R. 1258 (1945), the Court held employees of the office building of a large interstate producer to be engaged in an occupation necessary to the production of goods for commerce although no produc-

tion facilities were located in the building. The Court reasoned that in an economic sense, production was not limited to manual, physical labor, but required planning and control as well. Relying on this analysis of "production," the Court concluded that

"He who conceives or directs a productive activity is as essential to that activity as the one who physically performs it. From a productive standpoint, therefore, petitioner's executive officers and administrative employees working in the central office building are actually engaged in the production of goods for commerce just as much as are those who process and work on the tangible products in the various manufacturing plants. And since the respondent maintenance employees stand in the same relation to this production as did the maintenance workers in the *Kirschbaum* case, it follows that they are engaged in occupations 'necessary' to such production, thereby qualifying for the benefits of the Fair Labor Standards Act."

In 10 East 40th Street Building, Inc. v. Callus, supra, space in a 48-story office building was leased to over one hundred tenants engaged in a variety of enterprises, and a substantial portion of the tenants were shown to have been engaged in the production of goods for interstate commerce. However, no manufacturing was carried on in the building, the "production for interstate commerce" being carried on at locations other than the leased premises. In an oft-quoted opinion, Justice Frankfurter, writing for the majority, stated:

"Renting office space in a building exclusively set aside for an unrestricted variety of office work spontaneously satisfies the common understanding of what is local business and makes the employees of such a building engaged in local business. Mere separation of an occupation from the physical process of production does not preclude application of the Fair Labor Standards Act. But remoteness of a particular occupation from the physical process

is a relevant factor in drawing the line. Running an office building as an entirely independent enterprise is too many steps removed from the physical process of the production of goods. Such remoteness is insulated from the Fair Labor Standards Act by those considerations pertinent to the federal system which led Congress not to sweep predominantly local situations within the confines of the Act. To assign the maintenance man of such an office building to the productive process because some proportion of the offices in the building may, for the time being, be offices of manufacturing enterprises is to indulge in an analysis too attenuated for appropriate regard to the regulatory power of the States which Congress saw fit to reserve to them."

■ In 1949, the last clause of Section 3(j), 29 U.S.C.A. § 203(j), was amended by substituting the words "directly essential" for the word "necessary" and by adding the requirement that the employment be "closely related" to production. The purpose of this change, as indicated by the legislative history of the amendment, was to impose some restraint on the coverage of employees previously eligible under the "necessary to production" provision of the Act. See discussion in Mitchell v. H. B. Zachry Co., 362 U.S. 310, 317, 80 S.Ct. 739, 4 L.Ed.2d 753 (1960). However, this change was not intended to remove maintenance, custodial and clerical employees from the coverage of the Act, since "the work of such employees is, as a rule, closely related and directly essential to production whether they are employed by the producer of goods or by someone else who has undertaken the performance of particular tasks for the producer." Senate Report, 95 Cong.Rec. 14875.

In the present case, unlike that in *Callus*, goods are produced for interstate commerce on the premises, however, in contrast to the situation presented in *Kirschbaum*, only small quantities of goods for interstate commerce are produced in the Professional Building and by only one of the fourteen tenants occupying the rental space. Under circumstances similar to those of the present case, which, while not entirely analogous, are not totally dissimilar to the situations presented to the Court in the *Kirschbaum*, *Borden*, and *Callus* cases, the Courts have devised both quantitative and analytical tests for the purpose of determining whether the activities of a particular employee are "closely related" and "directly essential" to the production of goods for commerce. Thus, in one group of cases the percentage of the floor space of a building occupied by tenants, which is devoted to the production of goods for commerce, is given great weight in determining whether the maintenance employees therein are engaged in occupations closely related and directly essential to the production of goods for commerce. A 20% occupancy by such tenants is usually given as the minimum figure entitling the maintenance employees to the benefit of the statute. 10 East 40th Street Building, Inc. v. Callus, supra, 325 U.S. at 587, 65 S.Ct. 1227, 89 L.Ed. 1806 (dissenting opinion); Ullo v. Smith, 177 F.2d 101, 12 A.L.R.2d 1122 (2nd Cir. 1949). In the instant case the space occupied by Jahnig, the only producer of goods in the building, amounts to less than 10% of the floor space and, therefore, under the quantitative test plaintiffs would not be considered within the protection of the Act.

■ The Fourth Circuit Court of Appeals, utilizing a more realistic technique, has adopted an analytical approach to the question of coverage. In Wirtz v. Modern Trashmoval, Inc., 323 F.2d 451 (4th Cir. 1963), the Court laid down the following test:

"Careful examination of the cases convinces us that two factors, among others, which are vital in holding an employee's employment within the coverage of the Act, are the degree of 'remoteness' of his activities from production for commerce and the presence or absence of a 'dedication' to production for commerce. In short, for coverage to extend to an employee his

activity cannot be too remote from production for commerce and it cannot completely lack dedication to production for commerce."

Under this test it seems obvious that the activities of the two elevator operators are both remote from, and lack dedication to, production of goods for commerce. The offices of Jahnig are located exclusively on the first floor of the Professional Building and customers enter their offices through a separate entrance, not connected with the building lobby or elevator. Thus, any relationship between the duties of these elevator operators and the "production of goods for commerce" stems solely from the fact that they are both carried on in the same building. Such a relationship is neither sufficient in fact nor in law to bring Louise Davis and Mary McDade within the protection of the Act as engaged in an occupation "closely related" and "directly essential" to the production of goods for commerce.

The question of "remoteness" and "dedication" is more difficult of solution as it applies to the activities of Lorenzo Batts. His duties during the period in question included the cleaning and sweeping of the Jahnig offices and the replacement of light bulbs and other articles necessary in the maintenance of the building. Since it is the activities of the employee rather than the employer which are controlling, Kirschbaum Co. v. Walling, supra, and since in the present case it has been shown that the activities of Batts are confined to the lobby, stairwell, and first floor offices (including those of Jahnig), it cannot be said that plaintiff Batts has failed to show any relationship between his occupation and the production of goods for commerce. Therefore, defendant's motion for summary judgment insofar as it relates to this aspect of plaintiffs' cause of action must be denied.

### III

### SUMMARY

This Court, based upon the pleadings, stipulations, and affidavits presently filed herein, therefore, makes the following disposition of defendant's motion for summary judgment:

(a) A dispute concerning a material fact exists with respect to plaintiffs' involvement "in commerce" within the meaning of the Act and, therefore, defendant's motion, insofar as it relates to this question, must be denied.

(b) The record demonstrates without dispute that the activities of both Louise Davis and Mary McDade are remote from and lack dedication to the production of goods for commerce and, therefore, defendant is, as a matter of law, entitled to summary judgment with regard to this aspect of plaintiffs' claim.

(c) Defendant has failed to show that the activities of Lorenzo Batts are so remote from the production activities admittedly carried on within the building in question as to be without the protection of the Fair Labor Standards Act, and, insofar as it relates to this aspect of plaintiff Lorenzo Batts' claim, defendant's motion for summary judgment must be denied.